636 A.2d 227

**COMMONWEALTH of Pennsylvania, DEPARTMENT of ENVIRONMENTAL RESOURCES, Plaintiff,**

v.

**John BRYNER, Sr. et al., Defendants.**

Commonwealth Court of Pennsylvania.

Dec. 17, 1993.

Publication Ordered Dec. 29, 1993.

Beth Liss Shuman, for plaintiff.

Gregory Henry and Robert L. Saunders, for defendants.

Before PALLADINO, J.

PALLADINO, Judge.

Presently before this court is a motion for entry of response costs filed by the Commonwealth of Pennsylvania, Department of Environmental Resources (DER) seeking to recover expenses which it incurred in the cleanup of an abandoned nitroglycerin manufacturing plant. For the reasons which follow, the motion is granted.

On October 19, 1990, DER filed an amended complaint in this court's original jurisdiction[1] alleging that it incurred response costs when it remediated environmental contamination stemming from the dumping of nitroglycerin and acid waste at a site in Lafayette Township, McKean County, Pennsylvania (site). The complaint further alleged that John Bryner, Sr., John Bryner, Jr., Pringle Powder Company, American Glycerin Company, Inc. and Minard Run Oil Company (Defendants) were the parties responsible for the contamination.

More specifically, DER alleged that from 1925 until the nitroglycerin plant ceased operations in 1953, the Defendants discharged waste acid, along with small amounts of nitroglycerin, into open ditches which emptied into lagoons. In addition, the Defendants dumped leaking drums of nitroglycerin, orthonitrotoluene and dinitrotoluene into three lagoons, thereby allowing the drums to corrode and release their contents into the lagoons and surrounding sediment.

On or about December 15, 1988 and February 1, 1989, the Defendants were advised by DER to dispose of the leaking drums; however, the Defendants failed to take corrective measures. Because the release or threatened release of the hazardous substances presented a direct risk to the public health, safety and environment, DER undertook a prompt

1. Section 761(a) of the Judicial Code, 42 Pa.C.S. § 761(a).

interim cleanup action pursuant to Section 505(b) of the Hazardous Sites Cleanup Act (HSCA).[2]

Specifically, the cleanup action consisted of the detonation of three lagoons, removal of eight leaking drums of nitric acid, and neutralization of the acid contents of the drums. In addition, DER excavated the contaminated soil surrounding the drums, neutralized the soil, and packed the treated acid and soil in drums which were transported to a permitted disposal facility. DER then filed this action seeking to recover the costs it incurred in performing the prompt interim cleanup of the site.

By prior order of this court, DER's action was divided into two phases, the first to establish the liability, if any, of each of the Defendants, and the second to determine the amount for which the Defendants are liable. In an opinion and order dated May 20, 1992, this court determined that defendants John Bryner, Sr., American Glycerin Co., Inc., Pringle Powder Company and Minard Run Oil Company are responsible parties under Section 701(a)(1) of the HSCA,[3] and are, therefore, liable for the environmental contamination of the lagoons at the site. *Department of Environmental Resources v. Bryner,*

2. Act of October 18, 1988, P.L. 756, 35 P.S. § 6020.505(b) which provides in pertinent part as follows:

(b) Interim response.—An interim response may be taken before the development of an administrative record when, upon the basis of the information available to the department at the time of the interim response, there is a reasonable basis to believe that prompt action is required to protect the public health or safety or the environment. . . .

An interim response is defined as a response which does not exceed twelve months in duration or $2,000,000 in cost. 35 P.S. § 6020.103.

3. Section 701(a)(1) of the HSCA provides in pertinent part that:

(a) General Rule.—Except for releases of hazardous substances expressly and specifically approved under a valid Federal or State permit, a person shall be responsible for a release or threatened release of a hazardous substance from a site when any of the following apply:

(1) The person owns or operates the site:

(i) when a hazardous substance is placed or comes to be located in or on a site;

. . .; or

(iii) during the time of the release or threatened release.

35 P.S. § 6020.701(a)(1).

149 Pa.Commonwealth Ct. 59, 613 A.2d 43 (1992). We further determined that John Bryner, Sr., American Glycerin Company, Inc., and Pringle Powder Company are the parties responsible for the leaking drums of nitric acid and the contaminated soil at the site. *Id.*

In order to resolve the second phase of its action, DER filed the motion for entry of response costs which is presently before this court for disposition. In accordance with Section 702 of the HSCA, persons found to be responsible for the release or threatened release of a hazardous substance are strictly liable for those damages and costs associated with an interim response which are found to be reasonable in light of the information available to DER at the time the interim response action was taken. 35 P.S. § 6020.702(a)(2). Those costs shall include administrative and legal costs incurred by DER from its initial investigation up to the time that it recovers its costs. 35 P.S. § 6020.507(b). Additionally, DER is entitled to six percent annual interest on the total amount recoverable. 35 P.S. § 6020.702(b).

In response to DER's unopposed motion for a ruling on this court's scope of review, the commonwealth court issued an order dated March 11, 1991, wherein it stated that our review will be limited to a review of the administrative record and that the scope of review will be the arbitrary and capricious standard. Therefore, because this court has previously concluded that the Defendants are responsible persons within the meaning of the HSCA, the Defendants will be held liable for the costs associated with DER's action unless they establish that DER acted in an arbitrary and capricious manner in incurring those costs.

As an initial matter, the Defendants assert that DER is not entitled to recover any of its response costs because it failed to follow the statutory requirements of Section 708 of the HSCA, 35 P.S. § 6020.708, before it commenced cleaning up the contamination at the site. Specifically, the Defendants assert that because DER believed that more than one person was responsible for the release of the hazardous substances at the site, DER was required to prepare a nonbinding preliminary

allocation of proportionate responsibility among all known responsible persons, to give them written notice thereof, and to invite all said persons to participate in a dispute resolution procedure to determine each person's proportionate share of incurred response costs.

DER argues that contrary to the Defendants' assertions, Section 708 is not relevant to the cleanup action taken by DER in this case. More specifically, DER asserts that Section 708 was designed to promote voluntary cleanup of remedial action sites, and that when the provision is read in its entirety, it is clear that an interim response action is exempt from the requirements of Section 708. We agree.

Section 708 provides in pertinent part as follows:

(a) Mediation.—Whenever the department believes that more than one person may be responsible under section 701 for a release or threatened release, the department shall prepare a nonbinding preliminary allocation of proportionate responsibility among all known persons. The department shall give written notice of such preliminary allocation to all known responsible persons and invite such persons to *participate in a dispute resolution procedure selected by the department which may include mediation, arbitration, or similar procedures* to determine each person's proportionate share of the response costs and *the appropriate response action to be taken.* Within 120 days of the notice, the department and participating persons shall reach an agreement.... If no agreement has been reached within 120 days, the dispute resolution process shall terminate....

35 P.S. § 6020.708(a) (emphasis added).

 As noted previously in this opinion, an interim response is one which does not exceed twelve months or cost more than $2,000,000. Moreover, a prompt interim response, as was performed by DER in this case, is an expedited cleanup designed to protect the public health or safety or the environment from a release or threatened release of a hazardous substance. Conversely, a remedial response is a long-

term response which is more complex, time consuming and costly.

As Section 708 makes clear, the purpose of the mediation process is to determine each person's proportionate share of responsibility and to determine the appropriate response action to be taken. We agree with DER that this purpose is only appropriate in the context of a remedial response. A 120 day mediation period, the stated purpose of which is to determine an appropriate response, is clearly inconsistent with an interim response, which by necessity must be performed in an expedited manner.

We find support for this conclusion in Section 505 of the HSCA, entitled development and implementation of response actions. Section 505 provides that DER may first perform a prompt interim response and then develop an administrative record to document its actions. However, when Section 708 is read in conjunction with Section 505, a clearly unreasonable result is created. Accepting the Defendants' argument that Section 708 applies to an interim response, we would be forced to conclude that the legislature intended to authorize DER to clean up a site, develop an administrative record, and then obligate DER to invite potentially responsible persons to discuss the appropriate response action to be undertaken at the site. Because the legislature does not intend an unreasonable result, 1 Pa.C.S. § 1922, we conclude that Section 708 of the HSCA does not apply in instances where DER has performed an interim response rather than a remedial response.

The Defendants next assert that DER's response costs were, in part, incurred by the arbitrary and capricious actions of DER, and therefore, the Defendants cannot be held liable for the payment of those costs. In support of their position, the Defendants point to portions of the administrative record which they contend reveal that DER had no reason to believe that the lagoons presented a potential explosion hazard.

Specifically, the Defendants point to a statement made by John Bryner, Sr. that the acid pond had last been blasted in 1960; that the site was last operated in 1972; and that the

Bureau of Solid Waste Management tested the pond water in the late 1970's and found it safe to discharge into the surrounding areas. Defendants further point to internal records of the United States Environmental Protection Agency (EPA) which the Defendants contend establish that the nitroglycerine concentrations were well below the explosive range and that an analysis of the soil samples indicated that no explosive compounds were present in the acid spill area. Next, the Defendants assert that EPA records indicate that the site was secure on January 7, 1985. Finally, the Defendants point to an entry in the administrative record which the Defendants assert discloses that DER's decision to detonate all three lagoons was based exclusively upon an anonymous hearsay statement assumed to have been provided by a former employee of Pringle Powder Company.

In response to Defendants' assertions, DER notes that the administrative record also reveals that the EPA considered and rejected John Bryner, Sr.'s claim that the lagoon had been detonated in 1960; that the EPA considered the acid lagoon an explosion hazard and planned to detonate it but could not proceed with the plan because of problems with obtaining insurance; and that DER considered and rejected numerous other courses of action before determining to detonate the lagoons.

Having reviewed the administrative record, we conclude that the interim response action taken by DER in this matter was reasonable in light of the information available to DER at the time the response was initiated. We further conclude that the Defendants have failed to establish that DER acted in an arbitrary and capricious manner in incurring the costs associated with the interim response action.

Therefore, the motion for entry of response costs filed by DER is granted.

In accordance with DER's request, DER is awarded response costs totalling $102,285.90 as documented by the administrative record. Having previously found Defendants John Bryner, Sr., Pringle Powder Company, and American

Glycerin Company, Inc. responsible for the leaking drums of nitric acid and the contamination of the soil, we conclude that these defendants are jointly and severally liable for the response costs and prejudgment interest associated with the remediation of the drums of nitric acid and the contaminated soil. In addition, having previously found Defendants John Bryner, Sr., Pringle Powder Company, American Glycerin Company, Inc., and Minard Run Oil Company responsible for the contamination of the lagoons at the site, we conclude that these defendants are jointly and severally liable for the response costs and prejudgment interest associated with the remediation of the lagoons.[4]

## ORDER

AND NOW, December 17, 1993, the motion for entry of response costs filed by the Commonwealth of Pennsylvania, Department of Environmental Resources in the above-captioned matter is hereby granted.

1. DER is awarded response costs totalling $102,285.90 as documented by the administrative record.

2. Defendants John Bryner, Sr., Pringle Powder Company, and American Glycerin Company, Inc. are jointly and severally liable for the response costs and prejudgment interest associated with the remediation of the drums of nitric acid and the contaminated soil.

3. Defendants John Bryner, Sr., Pringle Powder Company, American Glycerin Company, Inc., and Minard Run Oil Company are jointly and severally liable for the response costs and prejudgment interest associated with the remediation of the lagoons.

4. DER is granted leave of court to submit future costs incurred by DER associated with the remediation of the site.

---

4. Pursuant to Section 705(b) of the HSCA, the Defendants, as responsible parties, have a statutory right to seek contribution from each other. 35 P.S. 6020.705(b).