COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL PROTECTION, Plaintiff,

v.

DELTA CHEMICALS, INC., George Chada, Hydrocarbon Refining Corp., Bessemer & Lake Erie Railroad; Bethlehem Steel; Carborundum Company, Castle Rubber Corporation, Chicago Rivet and Machine Company, Contraves–Goerz, Cooper Industries/McGraw–Edison, FBC Chemical Corporation, Gencorp Incorporated, General Motors Corporation, Globe Data System, Inc. d/b/a Globe Ticket Company, Leybold Vacuum Products, PPG Industries, Quality Chemicals, Inc., Reserve Environmental Service, Inc., Robertshaw Controls, Corporation, Spang and Company, A. Stucki Company, Traco/Three Rivers Aluminum, Union Railroad, Volkswagen of America, Westinghouse Electric and Bakerstown Container Corporation, Defendants.

Commonwealth Court of Pennsylvania.

Argued March 18, 1998.

Decided Dec. 10, 1998.

Barbara J. Grabowski, Pittsburgh, for plaintiff.

No appearance entered for defendants.

Before COLINS, President Judge, and DOYLE, J., McGINLEY, J., PELLEGRINI, J., FRIEDMAN, J., FLAHERTY, J., and LEADBETTER, J.

DOYLE, Judge.

Before this Court in our original jurisdiction is a Motion for Summary Judgment and Declaratory Judgment filed by the Department of Environmental Protection (Department), seeking reimbursement of hazardous waste cleanup costs from the defendants, Delta Chemicals (Delta), Hydrocarbon Refining Corporation (HRC) and the President and owner of both corporations, George Chada (collectively, Defendants). The Department seeks recovery of cleanup costs under Section 507(a) of the Hazardous Sites Cleanup Act (HSCA).[1]

## BACKGROUND

In 1977, Chada incorporated Delta and named himself as president. Thereafter, Delta operated a facility for the reclamation and recycling of hazardous materials, including chloride, trichloroethane, mineral spirits, non-halogenated aliphatices and paint wastes on a 1.3 acre site in North Buffalo Township, Armstrong County (Delta Site). From 1981 to 1987, Delta, and later HRC,[2] treated and disposed of hazardous wastes, which were generated off-site by third parties and then transported to the Delta Site. During that time period, Chada had control over all of the daily activities at the Delta Site.

In 1982, a fire and explosion at the Delta Site contaminated the soil, surface water and ground water. On July 27, 1983, Chada and the Department entered into a consent agreement that provided for a clean-up of the contamination caused by the fire and for continuous groundwater monitoring. The consent agreement also provided that Chada would assume personal responsibility for the Department's clean-up costs.

In 1987, the Defendants shut down the recycling facility, abandoned the Site and left behind tanks filled with hazardous materials which ranged in size from 250 gallons to 12,500 gallons. In addition, HRC left approximately 25 rusting 55–gallon barrels filled with hazardous waste and an unlined lagoon, also containing hazardous waste.

The hazardous waste abandoned at the Delta Site include trichloroethylene, methyl ethyl ketone, toluene, xylene, mineral spirits, urethane resins, methylene chloride, polyurethane resins and acids, which materials are toxic to humans.[3] Short term exposure to these chemicals can cause skin, eye and respiratory irritation. Long term exposure can cause central nervous system, liver and kidney damage.

Approximately 2,067 persons live within a three mile radius of the Delta Site and depend on groundwater for their domestic water supply. Also, the Delta Site lies within 700 feet of a stream known as Buffalo Creek, which originates as a spring adjacent to the Site and is listed by the Department as a high-quality water source and is used as a sport fishery. In 1987, groundwater contamination was detected in a 150–feet deep monitoring well at the Delta Site and in the spring that feeds Buffalo Creek.

In 1989, the Department determined that the chemicals stored at the Delta Site could leak and posed a danger. The Department conducted an interim response[4] to abate the release and threatened release of hazardous waste into the environment. The Depart-

1. Act of October 18, 1988, P.L. 756, *as amended*, 35 P.S. §6020.507(a).

2. Delta changed its name to HRC in 1983, and Chada was the president of HRC.

3. Toxic substance criteria are listed at 25 Pa. Code Chapter 16, Appendix A.

4. An interim response is one which does not exceed 12 months or $2,000,000 in cost. Section 103 of the HSCA, 35 P.S. §6020.103.

ment compiled the Administrative Record (record)[5] documenting all of the steps it took to clean-up the Delta Site and the cost of those steps. In December 1994, the Department issued its Final Remedial Response Statement of Decision outlining all clean-up actions to date. Between 1989 and December 1994, `the Department incurred $911,-360.01 in clean-up costs.

## PROCEDURAL HISTORY

In November 1995, the Department filed a complaint in equity, entitled "Complaint for Reimbursement of Response Costs and Action for Declaratory Judgment," with this Court, seeking to recover clean-up costs from twenty-six responsible parties including the Defendants. Count I of the Complaint avers that Defendants and others are responsible parties and that they are liable for hazardous waste clean-up costs incurred to date. Count II of the Complaint asks for a declaratory judgment that Defendants and the others are liable for future clean-up costs.

In 1995 and 1996, the Department entered into a series of consent agreements by which the parties that had shipped hazardous waste to the Delta Site agreed to pay a share of the clean-up costs proportional to the amount of waste they had shipped. The Department subsequently settled with all defendants except Delta, HRC, and Chada.

Thereafter, the Department filed motions for summary judgment and declaratory judgment. In an opinion and order dated December 4, 1997, upon considering the Department's motions, we held that this Court lacked subject matter jurisdiction over the Department's request to recover response costs. This Court noted that the Department was primarily interested in recovering response costs from the Defendants and was not seeking any specific equitable relief. We observed that Section 507(a) of the HSCA, 35

P.S. §6020.507(a), provides that the Department may file an action in equity in this Court to recover response costs, but also gives jurisdiction to the Environmental Hearing Board over actions to recover such costs. In light of that Section, we concluded that, in the absence of any ground for equitable relief, the Environmental Hearing Board had jurisdiction.

Further, we dismissed the Department's declaratory judgment claim seeking future response costs for the reason that such relief is not authorized by the HSCA.

The Department filed an application for reargument, which we granted on January 4, 1998. Our December 4, 1997 opinion was withdrawn, and this matter was reargued before an en banc panel of this Court.

## SUBJECT MATTER JURISDICTION

Because of our prior disposition of this matter, we will begin by considering the threshold issue of whether this Court has subject matter jurisdiction over the Department's action to recover response costs.

■ The Department argues that this Court has subject matter jurisdiction under Section 507(a) of the HSCA, because (1) its complaint is an action in equity, (2) the HSCA establishes dual jurisdiction over cost recovery actions between the courts and the Environmental Hearing Board, and (3) this Court has previously accepted jurisdiction over such actions.[6] We must agree.

The essential language of Section 507(a) of the HSCA is as follows:

**The department ... may recover those response costs and natural resource damages in an action in equity brought before a court of competent jurisdiction.** *In addition,* the board is given jurisdiction over actions by the department to recover

---

**5.** The Administrative Record consists of notices and comments, as well as technical information, including studies, inspection reports, sample results and permit files which relate to the release and to the selection, design and adequacy of the response action. Section 506 of the HSCA, 35 P.S. §6020.506.

**6.** After reargument was granted, the Defendants filed a notice of non-participation stating that they would not file a brief or participate in the argument before the en banc panel of this Court. The Defendants' counsel stated only that "I agreed with the Commonwealth Court's first decision. That is my brief." (Notice of Non-participation at 1.)

response costs and damages to natural resources.

35 P.S. §6020.507(a) (emphasis added).

The Commonwealth Court is, of course, a court of competent jurisdiction, and does, in general, have original jurisdiction over civil actions and proceedings brought by the Department as an agency of the Commonwealth. Section 761(a)(2) of the Judicial Code, 42 Pa.C.S. §761(a)(2). Furthermore, because we find that the Department has filed a complaint in equity to recover response costs from the Defendants,[7] under the plain language of Section 507(a), we now hold that this Court does have jurisdiction over the Department's complaint.

Likewise, the language in the second sentence of Section 507(a), which states that "[i]n addition," to this Court, the Board is also given jurisdiction over actions by the department to recover response costs and damages, clearly signals an intent to grant concurrent jurisdiction to the Environmental Hearing Board and this Court when the Department is seeking monetary damages only. In that sentence addressing the concurrent jurisdiction of both the Court and the Board, the statute speaks of exactly the same relief, that is, response costs and natural resource damages, neither of which are traditional equitable remedies; they are **entirely** statutory remedies.[8]

Further, in an opinion written by Judge Samuel L. Rodgers, *Department of Environmental Protection v. Altoona City Authority*, 689 A.2d 1009 (Pa.Cmwlth.), *direct appeal quashed*, 548 Pa. 35, 693 A.2d 583 (1997), we noted that Section 507(a) of the HSCA established concurrent jurisdiction between this Court and the Environmental Hearing Board. In that case, the issue was whether this Court had jurisdiction under Section 507(a) of the HSCA to decide claims filed against additional defendants by the original defendant. Concluding that this Court does not have jurisdiction over the *additional* defendants, Judge Rodgers stated the following:

It is apparent that this section [507(a)], together with Section 761(a)(2) of the Judicial Code, 42 Pa.C.S. §761(a)(2), merely *grants concurrent jurisdiction to the Commonwealth Court of an action brought by the Department against the original defendant*, and does not authorize jurisdiction over additional defendants against whom the Department has asserted no claim.

*Id.* 689 A.2d at 1011 (emphasis added).

Moreover, this Court has published opinions in which it has assumed jurisdiction over complaints filed by the Department that sought only the award of response costs. In *Department of Environmental Resources v. Bryner (Bryner I)*, 149 Pa.Cmwlth. 59, 613 A.2d 43 (Pa.Cmwlth.1992), this Court exercised jurisdiction by determining, on a motion for summary judgment, the liability issue of four defendants for response costs pursuant to Section 507(a) of the HSCA. In *Bryner I*, we granted summary judgment in favor of the Department. Subsequently, in *Department of Environmental Resources v. Bryner (Bryner II)*, 161 Pa.Cmwlth. 1, 636 A.2d 227 (Pa.Cmwlth.1997), the only issue before us for determination was the amount for which the defendants were liable, which we held to be $102,285.90, and we again exercised jurisdiction over that issue alone.

Although the decisions in *Altoona City Authority, Bryner I* and *Bryner II* were single-judge opinions of this Court, they are nonetheless highly persuasive authority; for if the Court had jurisdiction in those cases, it has jurisdiction in this case.

Therefore, for all the above reasons, we hold that this Court has subject matter jurisdiction under the HSCA, and we will thus proceed to consider the Department's mo-

---

7. Section 507(a) characterizes suits by the Department to collect response costs as equity actions, which is consistent with the fact that the Commonwealth, in response-cost cases, is essentially seeking equitable relief in the form of restitution for public monies it expended to remedy a public health hazard.

8. Although it is true, of course, that the Board may lack the depth of background to deal with all concepts of traditional equity jurisdiction, the obverse would certainly not be true, that is, that a court of competent jurisdiction would lack the ability to deal with response cost damages only. Both the cause of action created by the HSCA, and the remedies provided by it, are pure creatures of statutory conception.

tions for summary judgment and declaratory judgment.

## THE DEPARTMENT'S SUMMARY JUDGMENT MOTION

The Department moves for summary judgment on Count I of its complaint, its claim to recover response costs, against the Defendants. Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions, together with any affidavits, show that there is no genuine issue as to any material fact. Pa. R.C.P. No. 1035(b); *Bryner I*. A material fact is one that directly affects the outcome of the case. *Allen v. Colautti*, 53 Pa.Cmwlth. 392, 417 A.2d 1303 (Pa.Cmwlth.1980). The facts which directly affect the outcome of the case are gleaned from considering the substantive law underlying the cause of action. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Section 701(a) the HSCA., 35 P.S. §6020.701, sets forth the four operative facts which must be proven before the Department may recover response costs:

(1) there may be a release or threatened release,

(2) of a hazardous substance,

(3) from a site, and that

(4) there is a person responsible.

In their Answer, the Defendants admit that the Delta Site is a "site" [9] for purposes of the HSCA, that there was a "release" [10] of hazardous substances into groundwater at the Delta Site as defined under the HSCA, and that chemicals that contaminated the Delta Site are hazardous substances. (De-

fendants' Answer at ¶¶ 71, 72, and 73.) Defendants, however, deny that they are responsible persons under the HSCA. Because Defendants have admitted the first three elements of the Department's claim for response costs, the only focus our further analysis will be on whether the Defendants are responsible parties.

Defendants have not offered any argument opposing the Department's Motion for Summary Judgment nor have they offered any depositions, answers to interrogatories, or affidavits. Therefore, this Court will consider only the Defendants' Answer to the Department's Complaint to see if it presents any issue of material fact as to the remaining disputed element the Department must prove to recover response costs from Defendants.

## *"RESPONSIBLE PERSONS" UNDER THE HSCA*

The Department avers that Defendants are responsible persons [11] under Section 701(a) of the HSCA which provides, in pertinent part:

(a) **General rule.**—[A] person shall be responsible for a release or threatened release of a hazardous substance from a site when any of the following apply:

(1) The person owns or operates the site:

(i) when a hazardous substance is placed or comes to be located in or on a site;

(ii) when a hazardous substance is located in or on the site, but before it is released; or

"**Release.**" Spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposal into the environment. *The term includes the abandonment or discarding of barrels*, containers, vessels, and other receptacles containing a hazardous substance or contaminant.... 35 P.S. §6020.103 (emphasis added).

---

9. Section 103 of the HSCA provides, in part,

"**Site.**" Any building; structure; installation; equipment; pipe or pipeline, including any pipe into a sewer or publicly owned treatment works; well; pit; pond; lagoon; impoundment; ditch; landfill; storage container; tank; vehicle; rolling stock; aircraft; vessel; or area where a contaminant or hazardous substance has been deposited, stored, treated, released, disposed or, placed or otherwise comes to be located....

35 P.S. §6020.103.

10. In Section 103 of the HSCA, "release" is defined as follows:

11. A "person" is broadly defined by Section 103 of the HSCA, 35 P.S. §6020.103, as an individual, corporation, association, partnership, cooperative enterprise, municipal authority, interstate body, or other legal entity that is recognized by law as the subject of rights and duties.

(iii) during the time of the release or threatened release.

35 P.S. §6020.701(a)(1). Section 701 has been applied by this Court to one that owns, operates or otherwise controls the operations at a site when the hazardous substance comes to be located there. *Bryner I,* 613 A.2d at 45; 35 P.S. §6020.701(a)(1).

▮ Defendants have admitted that Delta and HRC owned the Site from 1981 to 1987, which is when the hazardous substances came to be located there.[12] (See Defendants' Answer ¶ 45.) Therefore, they meet the test of "responsible persons" set forth in Section 701(a)(1) of the HSCA and *Bryner I*. Because there is no genuine issue of material fact on this issue, we hold that Delta and HRC are responsible persons, as that term is defined in Section 701(a)(1) of the HSCA.

Delta and HRC, however, argue that they are not responsible persons because the hazardous waste, although located on their property, was actually owned by another company or by its bankruptcy trustee. (Defendants' Answer ¶¶ 45–46.) However, this averment, even if true, is irrelevant because section 701(a)(1) of the HSCA imposes strict liability on the owner *of a site* regardless of who has title to the hazardous substances located there. Therefore, this averment fails to raise a genuine issue of material fact.

▮ Defendants admit that Chada, as President of both Delta and HRC, controlled the day to day activities of these companies. (Defendants' Answer ¶¶ 1, 6, 46.) Because he controlled the day to day activities at the Site during the time that the hazardous waste came to be located there, Chada operated the Site. (Defendants' Answer ¶¶ 1, 6, 46.) On this point, there is no dispute and no genuine issue of material fact. Therefore, we hold that Chada is also a responsible person within the meaning of Section 701(a)(1) of the HSCA.

▮ Moreover, the 1983 consent agreement signed by Chada provided that he would personally assume all HRC obligations to bring the Site into compliance with environmental regulations and to perform a cleanup of the Site. For the additional reason of his assumption of HRC's obligations, we further hold that Chada is a responsible person within the meaning of Section 701(a)(1) of the HSCA.

In light of the above, it is clear that each of the Defendants, Delta, HRC and Chada, are responsible persons under the HSCA and therefore we conclude that the Department has satisfied every element under Section 701 of the HSCA to recover response costs from the Defendants.

## DEFENSES

Defendants, however, in their answer, raise two defenses to the Department's action based on the Section 703(a) of the HSCA, which provides:

(a) **Grounds.**—There shall be no liability under section 701 of this act for a person otherwise liable who can establish that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by any of the following:

(1) An act of God

(2) An act of war

(3) An act or omission of a third party other than an employee, agent or contractor of the responsible person or one whose act or omission occurs in connection with an agreement or contractual relationship . . . if the responsible person:

(i) exercised due care with respect to the hazardous substances concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances; and

(ii) took precautions against foreseeable acts or omissions of any such third party

---

**12.** Defendants deny that they owned the Delta Site after 1987, because Armstrong County placed the property on sale for non-payment of taxes. In 1986 and 1987, the Armstrong County Tax Bureau attempted to sell the Delta Site, but there were no interested buyers. The Delta Site remained unsold until June of 1996, when Armstrong County finally found a buyer.

and the consequences that could foreseeably result from those acts or omissions. 35 P.S. §6020.703(a).

◼ Defendants first argue that the 1982 fire was an act of God and, therefore, they are excepted from any liability under Section 703(a)(1) of the HSCA. Contrary to this argument, the Defendants' liability arising from the fire was resolved by the 1983 Consent Agreement between the Defendants and the Department. In addition, the record shows that the Defendants' activities *after* the 1982 fire, including the 1987 abandonment of the waste at the Delta Site, also gave rise to the Department's response costs. Therefore, this averment fails to raise an issue of material fact which would preclude the entry of summary judgment.

◼ Second, raising a defense under Section 703(a)(3) of the HSCA, Defendants assert that the hazardous substances at the Delta Site actually belong to J.J. Montaine or J.J. Montaine Ltd. or the Bankruptcy Trustee for these entities. However, Defendants fail to plead specifically how this fact brings them under the narrow exception created by Section 703(a)(3).

Moreover, Defendants aver that Chada was an employee of J.J. Montaine. (Defendants' Answer ¶ 1.) The fact that Chada was *both* an employee of J.J. Montaine, and President of Delta/HRC, creates the inference that J.J. Montaine was not a bona fide third party, or at the very least, that J.J. Montaine and HRC had a contractual relationship or other agreement. Either of these facts are sufficient to take Defendants out of the defense provided by 703(a)(3) of the HSCA.

◼ Even assuming, *arguendo*, that J.J. Montaine was a true third party and there was no contract or other agreement between them, Defendants have failed to aver that they took reasonable precautions against foreseeable acts or omissions of third parties such as J.J. Montaine. The abandonment of the Delta Site by Chada and HRC indicate that such precautions were, in fact, not tak-

en, and the record supports this view. Accordingly, we hold that this defense does not raise an issue of material fact that would preclude entry of summary judgment.

Therefore, because the Department has proven a claim under the HSCA for response costs and because the Defendants' defenses to that claim are meritless, we will grant the Department's motion for summary judgment.

## DEFENDANT'S LIABILITY FOR RESPONSE COSTS

Because the Department is entitled to summary judgment, we must now determine the extent of Defendants' liability to the Department for response costs. The Department's Summary Judgment motion avers that Defendants, as responsible persons, are jointly and severally liable to it for $468,-538.52 in unreimbursed cleanup costs, plus interest.[13] This claim is governed by Section 507(a) of the HSCA, which provides, in relevant part:

(a) **General rule.**—A responsible person under section 701 or a person who causes a release or threat of a release of a hazardous substance ... shall be liable for the response costs and for damages to natural resources. The department, a Commonwealth agency, or a municipality which undertakes to abate a public nuisance under this act or take a response action may recover those response costs and natural resource damages in an action in equity brought before a court of competent jurisdiction.

35 P.S. §6020.507(a).

◼ When the Department incurs response costs, the HSCA places the burden on the responsible persons to prove that the response costs incurred were arbitrary or capricious. Section 508(c) of the HSCA provides, in relevant part:

The party challenging the department's determination or assessment shall retain the burden of proving the department's

---

**13.** The Department's total response costs to date to clean up the Delta Site is $911,360.01. However, the numerous defendants in this case who settled with the Department paid the Department $442,821.49 toward those costs. Thus, the unpaid balance of the response costs is only $468,-538.52.

determination or assessment was arbitrary or capricious.

35 P.S. §6020.508(c). In reviewing the reasonableness of such costs, this Court's scope of review is limited to the administrative record developed by the Department. *Bryner II.*

In this case, the Defendants have admitted the amount of the Department's response costs in their Answer to the Department's complaint. (Defendants' Answer ¶ 63.) Moreover, they have not challenged the reasonableness of the Department's response costs other than to say that they generally "seem greatly excessive to clean up 1.3 acres." (Defendants' Answer ¶ 63.) This averment is insufficient to raise an issue of material fact. Therefore, these costs are deemed reasonable, not arbitrary and not capricious.

With regard to the Department's claim for interest, Section 702(b) of the HSCA provides:

> (1) The amounts recoverable in an action under sections 507 and 1101 include interest on the amounts recoverable [from responsible persons]. Interest shall accrue from the later of:
>
> (i) the date payment of a specified amount is demanded in writing; or
>
> (ii) the date of the expenditure concerned.
>
> (2) The rate of interest on the outstanding unpaid balance of the amounts recoverable under sections 507 and 1101 shall be 6% annually.

35 P.S. §6020.702(b). Because Defendants are responsible persons liable for costs under Section 507, the Department is awarded interest, as provided for in Section 702(b), from the date such costs were demanded, July 14, 1995.

In conclusion, because the Department has incurred reasonable response costs to clean up a discharge of a hazardous substance on a site for which Defendants are responsible persons, we grant the Department's motion for summary judgment and the Department is awarded response costs in the amount of $468,538.52, plus 6% interest from July 14, 1995.

## THE DECLARATORY JUDGMENT ACTION

In Count II of the Department's Complaint, the Department seeks a declaratory judgment that Defendants are liable for future cleanup costs. The Department has averred that it will incur future cleanup costs, and the record contains substantial and credible evidence supporting the Department's averment. The Department believes that granting it such relief would prevent unnecessary litigation and promote judicial economy.

The HSCA does not explicitly state that the Department may seek a declaratory judgment regarding future response costs. But, because Section 507(a) of the HSCA gives the department the right to seek equitable relief to recover response costs and this Court has the power, under the Declaratory Judgments Act, Section 7532 of the Judicial Code, 42 Pa.C.S. §7532, to grant declaratory relief, the Department's request for a declaration as to future response costs is not per se improper. The granting of a declaratory judgment, however, is within the sound discretion of the trial judge and is not granted as of right, *Keystone Insurance Co. v. Warehousing & Equipment Corporation*, 402 Pa. 318, 165 A.2d 608 (1960), and we do not believe that declaratory relief is appropriate at this time.

The substantive rights of the parties are defined by the HSCA. Section 508(c) of the HSCA provides that Defendants are not liable for the Department's response costs if those costs are arbitrary or capricious. We have no way of knowing now whether future response costs will be reasonable because the record supporting those costs has not yet been made. We decline to enter a declaratory judgment, the effect of which would be to prospectively declare those costs reasonable. Such a holding would deprive Defendants of an opportunity, afforded to them by the HSCA, to prove that such future costs are arbitrary or capricious.

However, because the record developed by the Department documents the need for further cleanup at the Site, and because we hold

today that Defendants are responsible persons liable for the cleanup costs incurred to date, we grant the Department leave to submit future costs, documented in the record, for our review.

## CONCLUSION

Accordingly, the Department's motion for summary judgment is granted, and the Department is awarded response costs in the amount of $468,538.52, plus 6% interest from July 14, 1995. The Department's motion for declaratory relief is hereby denied, but the Department may submit future costs, documented in the record, for our review.

## *ORDER*

**AND NOW**, December 10, 1998, the Motion for Summary Judgment and Declaratory Judgment filed by the Commonwealth of Pennsylvania, Department of Environmental Protection, in this matter is hereby granted in part and denied in part.

1. The Department of Environmental Protection is awarded response costs totalling $468,538.52.

2. The Department is awarded 6% interest from July 14, 1995.

3. Defendants, Delta Chemicals, Inc., Hydrocarbon Refining Corporation, and George Chada, are jointly and severally liable for the response costs and interest.

4. The Department of Environmental Protection is granted leave of court to submit future costs incurred by the Department associated with cleanup of the Site.

President Judge COLINS and Judge FLAHERTY dissent.