# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| T.L.P., Jr., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 591 M.D. 2019 |
| | : | Argued: February 8, 2021 |
| Pennsylvania State Police of the | : | |
| Commonwealth of Pennsylvania, | : | |
| Respondent | : | |

**BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge**
**HONORABLE MARY HANNAH LEAVITT, Judge (P.)**
**HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge**

**OPINION BY**
**PRESIDENT JUDGE BROBSON**          **FILED:  March 16, 2021**

Petitioner T.L.P., Jr. (Petitioner) filed a petition for review (Petition) in this Court's original jurisdiction against the Pennsylvania State Police (PSP), seeking a writ of mandamus compelling PSP to comply with an order of the Court of Common Pleas of York County (Common Pleas), dated September 28, 2017, discharging Petitioner from his responsibility to register as a sex offender under Pennsylvania's Sex Offender Registration and Notification Act (SORNA),[1]

---

[1] As we explained in *Dougherty v. Pennsylvania State Police*, 138 A.3d 152 (Pa. Cmwlth. 2016) (en banc):

Courts have also referred to SORNA as the Adam Walsh Act.  SORNA is the General Assembly's fourth enactment of the law commonly referred to as Megan's Law.  Megan's Law I, the Act of October 24, 1995, P.L. 1079 (Spec. Sess. No. 1), was enacted on October 24, 1995, and became effective 180 days thereafter. Megan's Law II[, the Act of May 10, 2000, P.L. 74,] was enacted on May 10, 2000[,] in response to Megan's Law I being ruled unconstitutional by our

42 Pa. C.S. §§ 9799.10-.41, which has since been replaced by SORNA II, and under Megan's Law II (Registration Discharge Order). In the alternative, Petitioner is seeking declaratory and/or injunctive relief prohibiting PSP from requiring him to register as a sex offender under SORNA II. Presently before the Court for disposition is Petitioner's application for summary relief (Application). For the reasons set forth below, we grant Petitioner's Application.

## I. BACKGROUND

On October 25, 2000, Petitioner was convicted of indecent assault under Section 3126(a)(7) of the Crimes Code, 18 Pa. C.S. § 3126(a)(7), and corruption of minors under Section 6301 of the Crimes Code, 18 Pa. C.S. § 6301. (Pet. ¶ 4.)

---

Supreme Court in *Commonwealth v. Williams*, . . . 733 A.2d 593 ([Pa.] 1999). Our Supreme Court held that some portions of Megan's Law II were unconstitutional in *Commonwealth v. Gomer Williams*, . . . 832 A.2d 962 ([Pa.] 2003), and the General Assembly responded by enacting Megan's Law III[, the Act of November 24, 2004, P.L. 1243,] on November 24, 2004. The United States Congress expanded the public notification requirements of state sexual offender registries in the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§ 16901-16945, and the Pennsylvania General Assembly responded by passing SORNA on December 20, 2011[,] with the stated purpose of "bring[ing] the Commonwealth into substantial compliance with the Adam Walsh Child Protection and Safety Act of 2006." 42 Pa. C.S. § 9799.10(1). SORNA went into effect a year later on December 20, 2012. Megan's Law III was also struck down by our Supreme Court for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution. [*Cmwlth.*] *v. Neiman*, . . . 84 A.3d 603, 616 ([Pa.] 2013). However, by the time it was struck down, Megan's Law III had been replaced by SORNA.

*Dougherty*, 138 A.3d at 155 n.8. Our Supreme Court, by decision and order dated July 19, 2017, declared SORNA unconstitutional in *Commonwealth v. Muniz*, 164 A.3d 1189, 1193 (Pa. 2017), *cert. denied*, 138 S. Ct. 925 (2018).

The General Assembly responded to the *Muniz* decision by enacting the Act of February 21, 2018, P.L. 27 (Act 10). Shortly thereafter, the General Assembly reenacted and amended various provisions of Act 10 by the Act of June 12, 2018, P.L. 140 (Act 29). The statutory provisions of Acts 10 and 29 are set forth at 42 Pa. C.S. §§ 9799.10-.75, and we will refer to them herein as SORNA II.

Megan's Law II, the iteration of Pennsylvania's sex offender registration law in effect at the time of Petitioner's conviction, required Petitioner to register with PSP as a sex offender for a period of 10 years. *See* 42 Pa. C.S. § 9795.1 (expired 2012). In May 2001, following his release from confinement, Petitioner began his period of registration with PSP. (Pet. ¶¶ 9-10.)

SORNA went into effect on December 20, 2012. SORNA required an individual, like Petitioner, who was convicted of the offense of indecent assault under Section 3126(a)(7) of the Crimes Code to register as a sex offender with PSP for his/her lifetime. *See* 42 Pa. C.S. §§ 9799.14(d)(8) and 9799.15(a)(3). In 2016, Petitioner was convicted under Section 4915.1 of the Crimes Code, 18 Pa. C.S. § 4915.1, because he failed to comply with SORNA's sex offender registration requirements. (Pet. ¶ 7 and App. A.) Subsequent thereto, on July 19, 2017, the Pennsylvania Supreme Court, in *Muniz*, declared SORNA unconstitutional, holding that the retroactive application of SORNA's registration requirements, which the Supreme Court determined were punitive in nature, violated the *ex post facto* clauses of the Pennsylvania and United States Constitutions. *Muniz*, 164 A.3d at 1208-23. On August 2, 2017, in response to the Supreme Court's decision in *Muniz*, Petitioner filed a motion under the Post Conviction Relief Act (PCRA)[2] with Common Pleas, seeking to vacate his conviction for failure to comply with SORNA's registration requirements. (Pet. ¶ 9 and App. A.) In support thereof, Petitioner alleged that, in light of the Supreme Court's decision in *Muniz*, SORNA could not be retroactively applied to him, and, without SORNA, he was subject only to a 10-year period of

---

[2] 42 Pa. C.S. §§ 9541-9546.

registration, which would have expired on September 11, 2014,[3] before Petitioner had been accused of failing to comply with his sex offender registration requirements. (Pet. ¶ 9 and App. A.) The Commonwealth of Pennsylvania (Commonwealth) did not oppose Petitioner's PCRA motion, and, by order dated September 13, 2017, Common Pleas vacated Petitioner's conviction/sentence for failure to comply with SORNA's registration requirements. (Pet. at App. B.) Shortly thereafter, on September 27, 2017, Petitioner filed a motion with Common Pleas, seeking to vacate his sex offender registration requirements, arguing again that his 10-year period of registration had expired on September 11, 2014, and, as a result, he was no longer required to register as a sex offender with PSP under Megan's Law II. (Pet. ¶ 11 and App. C.) In response thereto, on September 28, 2017, Common Pleas issued the Registration Discharge Order, which provided, in relevant part: "[PSP] is hereby notified that Petitioner's [r]egistration requirements have been satisfied and Petitioner is hereby discharged from any further responsibility to register under Megan's Law." (Pet. ¶ 12 and App. D.)

In 2018, in response to the Supreme Court's decision in *Muniz*, the General Assembly enacted SORNA II. SORNA II, arguably in an effort to address the *ex post facto* concerns raised in *Muniz*, divided Pennsylvania's sex offender registration scheme into two subchapters: (1) Subchapter H, which is based upon SORNA and applies to those individuals who commit a sexual offense on or after

---

[3] In support of his contention that his 10-year registration period would have expired on September 11, 2014, Petitioner relied upon a document that he received as part of the discovery process in his criminal case for failure to comply with his sex offender registration requirements. (Pet. at App. A.) That document, which appears to be some sort of log maintained by PSP's Megan's Law Section, provides, in relevant part: "[Petitioner] called in asking questions about his registration. Told him his end date was 9/11/2014." (Pet. at App. A, Ex. 3.)

December 20, 2012, and are thereafter convicted for such offense; and (2) Subchapter I, which applies to those individuals who committed a sexual offense on or after April 22, 1996, but before December 20, 2012, whose period of registration with PSP has not yet expired. *See* 42 Pa. C.S. §§ 9799.11 and 9799.52. Under SORNA II, an individual who, like Petitioner, is convicted of the offense of indecent assault under Section 3126(a)(7) of the Crimes Code is again required to register as a sex offender with PSP for a period of 10 years. *See* 42 Pa. C.S. § 9799.55. Following the enactment of SORNA II, PSP informed Petitioner that his obligation to register as a sex offender had been reactivated. (Pet. ¶ 14.)

On October 18, 2019, Petitioner filed his Petition with this Court, setting forth two causes of action and seeking a writ of mandamus or, in the alternative, declaratory and/or injunctive relief preventing PSP from requiring Petitioner to register as a sex offender under SORNA II. In Count I of his Petition, Petitioner contends that he is entitled to a writ of mandamus compelling PSP to comply with the Registration Discharge Order and refrain from imposing SORNA II's registration requirements on him. Alternatively, in Count II of his Petition, Petitioner contends that he is entitled to an injunctive order and/or declaration preventing PSP from requiring him to register as a sex offender under SORNA II because, by its terms, SORNA II does not apply to him, and, even if it did, it is punitive in nature and cannot be applied retroactively. On May 1, 2020, after the pleadings were closed, Petitioner filed his Application, seeking summary relief on only the first two grounds of his Petition—*i.e.*, PSP's noncompliance with the Registration Discharge Order and the inapplicability of SORNA II to Petitioner given that his registration requirements were satisfied/terminated prior to the

5

enactment of SORNA II.[4]  The parties have filed their briefs in support of and in opposition to the Application, and the matter is now ripe for disposition.

## II.  DISCUSSION

### A.  Standard for Summary Relief

"At any time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear."  Pa. R.A.P. 1532(b).  "Summary relief under [Pennsylvania Rule of Appellate Procedure] 1532(b) is similar to the relief envisioned by the rules of civil procedure governing summary judgment." *Brittain v. Beard*, 974 A.2d 479, 484 (Pa. 2009).  This Court "must determine, based on the undisputed facts, whether 'either party has a clear right to the relief requested.'" *Summit Sch., Inc. v. Dep't of Educ.*, 108 A.3d 192, 195 (Pa. Cmwlth. 2015) (quoting *Bell Atl.-Pa., Inc. v. Tpk. Comm'n*, 703 A.2d 589, 590 (Pa. Cmwlth. 1997), *aff'd*, 713 A.2d 96 (Pa. 1998)).  "An application for summary relief may be granted if a party's right to judgment is clear and no material issues of fact are in dispute." *Leach v. Turzai*, 118 A.3d 1271, 1277 n.5 (Pa. Cmwlth. 2015) (en banc), *aff'd*, 141 A.3d 426 (Pa. 2016).  "[I]n ruling on a motion for summary relief, the evidence must be viewed in the light most favorable to the non-moving party and [this C]ourt may enter judgment only if:  (1) there are no genuine issues of material fact; and (2) the right to relief is clear as a matter of law." *Flagg v. Int'l Union, Sec.,*

---

[4] In his Application, Petitioner, recognizing both that there could be a factual dispute and that the issue was currently pending before the Supreme Court, did not seek summary relief with respect to his claim that Subchapter I of SORNA II is punitive and, therefore, could not be retroactively applied to him.  While this issue is not presently before the Court, we would be remiss if we did not point out that, since the time that Petitioner filed his Application, the Supreme Court, in *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020), concluded that Subchapter I is nonpunitive in nature and, as a result, does not violate the constitutional prohibition against *ex post facto* laws.  *Lacombe*, 234 A.3d at 626-27.

*Police, Fire Pros. of Am., Local 506*, 146 A.3d 300, 305 (Pa. Cmwlth. 2016). Petitioner, as the moving party, has the burden of proving the non-existence of any genuine issue of fact. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 468-69 (Pa. 1979). "A material fact is one that directly affects the outcome of the case." *Dep't of Env't Prot. v. Delta Chems., Inc.*, 721 A.2d 411, 416 (Pa. Cmwlth. 1998) (en banc). "The facts which directly affect the outcome of the case are gleaned from considering the substantive law underlying the cause of action." *Id.*

### B. Count I – Writ of Mandamus to Compel PSP to Comply with the Registration Discharge Order

Petitioner argues that he is entitled to a writ of mandamus compelling PSP to comply with the Registration Discharge Order, because the undisputed material facts establish that the Registration Discharge Order is a valid court order that terminated his sex offender registration requirements, PSP has a clear duty to comply with the Registration Discharge Order, and, given the fact that a valid court order is already in place, there is no other adequate legal remedy available to him apart from mandamus relief. Petitioner further contends that, despite PSP's apparent conclusions to the contrary, the Registration Discharge Order is not just limited to Petitioner's registration requirements under SORNA. Rather, the Registration Discharge Order also applies to Petitioner's registration requirements under SORNA II because: (1) "the basis for [the] relief advanced in [his] motion [seeking to vacate his sex offender registration requirements] was not just that [he] was entitled to relief under [*Muniz*], but [also] that 'his registration period of 10 years [had] elapsed and he should no longer be required to register under Megan['s] Law[;]'" and (2) Common Pleas "found the inapplicability of SORNA meant [Petitioner] had completed his original, [10]-year period of registration in 2014." (Petitioner's Br. at 10 (quoting App. C ¶ 6); Petitioner's Reply Br. at 6.)

7

Petitioner further contends that, even if PSP believes that the Registration Discharge Order is invalid following the General Assembly's passage of SORNA II and/or that the Registration Discharge Order conflicts with its statutory duties, PSP cannot just simply choose not to comply with a court order.

In response, PSP argues that Petitioner is not entitled to summary relief in the form of a writ of mandamus compelling PSP to comply with the Registration Discharge Order, because the Registration Discharge Order is invalid as a basis to exempt Petitioner from the sex offender registration requirements of SORNA II. In that regard, PSP contends that Common Pleas issued the Registration Discharge Order pursuant to its PCRA decision, which vacated Petitioner's conviction/sentence for failure to comply with SORNA's registration requirements on the basis of the Supreme Court's decision in *Muniz* and the fact that SORNA sought to retroactively increase Petitioner's registration period to his lifetime. PSP, therefore, suggests that the Registration Discharge Order is limited solely to the application of SORNA to Petitioner, and it "cannot operate to exempt Petitioner from future laws, including [SORNA II], which was enacted subsequent to the [Registration Discharge] Order." (PSP's Br. at 6.) Alternatively, PSP argues that, to the extent that the Registration Discharge Order seeks to establish that Petitioner satisfied his 10-year registration requirement under SORNA II, the Registration Discharge Order is still invalid because: (1) PSP was not a party to Petitioner's motion seeking to vacate his sex offender registration requirements; and (2) Common Pleas entered the Registration Discharge Order "based upon a unilateral presentation from . . . Petitioner regarding PSP's Megan's Law file[, and] PSP had not [sic] chance to defend its file or explain Petitioner's registration requirements." (PSP's Br. at 8.) PSP suggests that this was improper because under

8

the Supreme Court's decision in *Konyk v. Pennsylvania State Police*, 183 A.3d 981 (Pa. 2018), PSP had enforcement authority under Megan's Law II and, therefore, was a proper/indispensable party to Petitioner's motion seeking to vacate his sex offender registration requirements.

In his reply brief, Petitioner argues that PSP's reliance on *Konyk* is misplaced because, even though PSP may have been a proper party to Petitioner's motion seeking to vacate his sex offender registration requirements, PSP was not an indispensable party. Petitioner contends that *Konyk* is also distinguishable from the facts of this case because, while PSP may not have been a party to the proceedings that resulted in the Registration Discharge Order, the Commonwealth was, and the Commonwealth did not oppose his request to have his sex offender registration requirements vacated. Petitioner further suggests that PSP did not appeal the Registration Discharge Order and, yet, is essentially seeking to relitigate the matter without identifying any mechanism for challenging the Registration Discharge Order at this late date.

The purpose of a mandamus action is to compel a governmental entity to perform a mandatory, ministerial duty. *See Chadwick v. Dauphin Cnty. Off. of the Coroner*, 905 A.2d 600, 603 (Pa. Cmwlth. 2006), *appeal denied*, 917 A.2d 847 (Pa. 2007). To prevail in a mandamus action, the petitioner must demonstrate: a clear legal right for performance of an act by the government; a corresponding duty in the government to perform the ministerial act and mandatory duty; and the absence of any other appropriate or adequate remedy. *Id.* at 603-04.

Under SORNA II, PSP is responsible for the creation and maintenance of Pennsylvania's sex offender registry. *See* 42 Pa. C.S. §§ 9799.16 and 9799.67(1). This duty, which essentially requires PSP to maintain a database of those individuals

9

who are required to register as a sex offender in Pennsylvania, is ministerial in nature. In other words, except in very limited circumstances—*e.g.*, when individuals have received military, out-of-state, federal, or foreign convictions and PSP is required to determine the Pennsylvania sexual offense that is similar/equivalent thereto, *see Konyk*, 183 A.3d at 986; *M.S. v. Pa. State Police*, 212 A.3d 1142, 1148 (Pa. Cmwlth. 2019)—PSP is not responsible for determining which individuals are required to register as a sex offender in Pennsylvania or for how long those individuals are required to register; those factors have been predetermined by the General Assembly based upon the offense for which those individuals have been convicted. Rather, PSP is responsible for entering those individuals into the registry, calculating when their registration periods will be completed, and then removing them from the registry once they have completed their registration period.

Thus, given that PSP's duty relative to the inclusion of individuals in Pennsylvania's sex offender registry is generally ministerial, PSP was not an indispensable party to Petitioner's motion seeking to vacate his sex offender registration requirements.[5] The Commonwealth's interests were represented by the

---

[5] PSP's reliance on *Konyk* for the contention that PSP was an indispensable party to Petitioner's motion seeking to vacate his sex offender registration requirements is misplaced. In *Konyk*, the petitioner filed an original jurisdiction action against PSP with this Court, seeking "mandamus relief in the form of a directive to PSP to conform [his] registration status to the requirements of Megan's Law III rather than SORNA." *Konyk*, 183 A.3d at 985. In support thereof, the petitioner contended that, "as a result of his plea agreement, a contract was formed between himself and the Commonwealth," which "incorporated the [10]-year period reflected under Megan's Law III," and, therefore, the "retroactive application of SORNA's 15-year period would breach the contract." *Id.* On appeal from this Court's decision relative to PSP's preliminary objections to the petitioner's petition for review, the Supreme Court considered, as a threshold issue, whether PSP was a proper defendant to the petitioner's action. *Id.* at 986. PSP suggested that, given its "ministerial role relative to Megan's Law," the petitioner should have named the Commonwealth as a respondent, not PSP. *Id.* Ultimately, the Supreme Court concluded that, because PSP has enforcement authority with respect to the requirements of SORNA and

10

York County District Attorney's Office. PSP is not entitled to a "do over" simply because it is unhappy with the way in which the York County District Attorney's Office handled the matter and/or the outcome of those proceedings. To the extent that it disagreed with the Registration Discharge Order, PSP could have sought to intervene before Common Pleas and then appealed Common Pleas' decision to the Pennsylvania Superior Court. PSP did not do so and, instead, chose to simply ignore the Registration Discharge Order because it believed the Registration Discharge Order was invalid and unenforceable. PSP, an executive branch agency, is not permitted to independently decide which court orders it will follow and which it will not. PSP is bound by all court orders, including the Registration Discharge Order, unless and until they are subsequently invalidated.[6]

In light of the above, Petitioner has established that there are no genuine issues of material fact and that he has a clear right to mandamus relief. First, the Registration Discharge Order established that Petitioner had satisfied his sex offender registration requirements and discharged Petitioner from any further responsibility to register as a sex offender in Pennsylvania. Contrary to PSP's contentions, there is nothing about the Registration Discharge Order that limited its application to Petitioner's registration requirements under SORNA. In fact, the Registration Discharge Order specifically referenced that Petitioner was discharged

---

"PSP must occasionally interpret the governing statutory provisions to determine a particular registrant's obligations," "PSP is an appropriate defendant relative to a cause of action which would result in a directive that the individual's registration period be reduced or eliminated." *Id.* at 987. Contrary to PSP's contentions, however, an appropriate defendant does not necessarily mean an indispensable defendant.

[6] Nothing in this opinion should be construed to mean that this Court believes that the Registration Discharge Order should or should not be invalidated. To the extent that PSP believes that the Registration Discharge Order is invalid, however, this Court is not the proper forum to decide this question.

11

from his responsibility to register under "Megan's Law." (*See* Pet. at App. D.) Second, as explained more fully above, PSP has a duty to comply with the Registration Discharge Order. Third, the only adequate and appropriate remedy under these circumstances is to compel PSP to comply with the Registration Discharge Order. For these reasons, we conclude that Petitioner is entitled to summary relief in the form of a writ of mandamus compelling PSP to comply with the Registration Discharge Order.[7]

## III. CONCLUSION

Accordingly, we grant Petitioner's Application.

_____
P. KEVIN BROBSON, President Judge

---

[7] Given our disposition above, we need not consider Petitioner's alternative request for declaratory and/or injunctive relief.

12

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

T.L.P., Jr.,                                   :
                    Petitioner        :
                                              :
          v.                              :     No. 591 M.D. 2019
                                              :
Pennsylvania State Police of the    :
Commonwealth of Pennsylvania,    :
                    Respondent     :

# **O R D E R**

AND NOW, this 16th day of March, 2021, the Application for Summary Relief filed by Petitioner is hereby GRANTED, and a writ of mandamus is hereby ISSUED compelling the Pennsylvania State Police to comply with the order of the Court of Common Pleas of York County, dated September 28, 2017.

_____
P. KEVIN BROBSON, President Judge