SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.
 

 OPINION
 

 CHIEF JUSTICE SAYLOR
 

 In this direct appeal we address a circumstance in which an individual pleaded guilty in federal court, pursuant to a negotiated plea agreement, to a Megan's Law predicate offense carrying a ten-year registration period. The primary issue is whether a contract-based cause of action exists in his favor to enforce the ten-year period where subsequent state legislation increased the registration period to fifteen years and the Commonwealth was not a party to the plea agreement.
 

 I. Background
 

 [1]
 

 In 2005, Appellant entered into a negotiated plea agreement with federal prosecutors in Pennsylvania whereby he pleaded guilty to one count of possessing child pornography.
 
 See
 

 18 U.S.C. § 2252
 
 (a)(4)(B). Neither the Commonwealth of Pennsylvania nor the Pennsylvania State Police ("PSP") was a party to the negotiations or the plea agreement. At the time, Megan's Law III was in effect. Based on the offense to which Appellant pled guilty, that enactment required Appellant to register as a sex offender for ten years upon his release from prison.
 
 See
 
 42 Pa.C.S. § 9795.1(a)(3) (superseded).
 
 [2]
 
 In the context of the plea agreement, Appellant understood and took into account this ten-year period when he pleaded guilty.
 

 Appellant was released from federal custody in March 2007 and began registering his address with PSP as required under Megan's Law III.
 
 [3]
 
 Since then, he has satisfied all requirements imposed on him at sentencing and has complied with Megan's Law.
 

 In 2012, before Appellant completed his ten-year registration period, Megan's Law III was replaced by Megan's Law IV, also referred to as the Sexual Offender Registration and Notification Act ("SORNA").
 
 See
 

 Commonwealth v. Derhammer
 
 , --- Pa. ----, ----,
 
 173 A.3d 723
 
 , 724-26 (2017) (providing a brief history of the evolution
 of Megan's Law in Pennsylvania, including the transition from Megan's Law III to SORNA). At that time, Megan's Law III registrants became subject to SORNA's registration requirements.
 
 See
 
 42 Pa.C.S. § 9799.13. In light of this development, PSP told Appellant in December 2012 that he would be reclassified under SORNA's three-tier system. In January 2013, PSP notified Appellant that he was deemed a Tier-1 offender,
 
 see
 
 42 Pa.C.S. § 9799.14(b)(21), and, as such, his registration term had been enlarged from ten to fifteen years.
 
 See
 
 id.
 

 § 9799.15(a)(1). Thus, Appellant's registration period is now set to expire in 2022 instead of 2017.
 

 Appellant filed in the Commonwealth Court's original jurisdiction an amended Petition for Review (the "Petition"), naming PSP as the sole respondent. In the Petition, Appellant sought mandamus relief in the form of a directive to PSP to conform Appellant's registration status to the requirements of Megan's Law III rather than SORNA. He asserted that: as a result of his plea agreement, a contract was formed between himself and the Commonwealth; the contract incorporated the ten-year period reflected under Megan's Law III; and retroactive application of SORNA's 15-year period would breach the contract.
 

 PSP filed preliminary objections in the nature of a demurrer, averring that: (a) in light of Appellant's guilty plea, Appellant is now required by statute to register for fifteen years; (b) the six-month statute of limitations for mandamus actions had expired by the time Appellant commenced this litigation; (c) in any event, the elements of mandamus-including a clear right to relief on the part of the petitioner and a mandatory, ministerial duty on the part of the respondent-are absent in view of SORNA's 15-year requirement as applied to Appellant; (d) PSP cannot be liable on a breach-of-contract theory since neither it nor the Commonwealth ever entered into an implied contract with Appellant, given that his plea agreement was with the federal government and not the state government; and (e) to the extent a breach-of-contract claim might otherwise be viable, it is barred by the doctrine of sovereign immunity.
 

 The court disposed of PSP's preliminary objections in a published opinion.
 
 See
 

 Konyk v. PSP
 
 ,
 
 133 A.3d 96
 
 (Pa. Cmwlth. 2016) (
 
 en banc
 
 ). The court first observed that, in spite of the Petition's "mandamus" label, its contents sought equitable relief in the form of specific performance of the terms of Appellant's plea agreement with the United States.
 
 See
 

 id.
 

 at 99-100 & n.8 (citing
 
 Strank v. Mercy Hosp. of Johnstown
 
 ,
 
 383 Pa. 54
 
 , 56,
 
 117 A.2d 697
 
 , 698 (1955) (suggesting a writ of mandamus will not issue to enforce a right based solely on contract and not on law) ). However, the court elected to overlook the mislabeling of the Petition and treat it as if it had been correctly labeled.
 
 See
 

 id.
 

 at 100 (citing
 
 Taylor v. PSP
 
 ,
 
 132 A.3d 590
 
 , 599-600 (Pa. Cmwlth. 2016) (indicating that, while it is preferable that petitions be correctly titled, the procedural rules favor treating pleadings by reference to their substance) ). Accordingly, the court overruled PSP's mandamus-related preliminary objections.
 

 In terms of the contract claim, the court recited that Appellant's theory was that, by entering into a plea agreement with the United States with the understanding that he only had to register as a sex offender for ten years, Appellant also entered into an implied contract with the Commonwealth that incorporated Megan's Law as it existed at the time of the agreement,
 
 i.e.
 
 , Megan's Law III. The Commonwealth Court rejected this theory, however, noting that Appellant had not alleged that the
 Commonwealth "was involved or participated in the plea negotiations, was an intended beneficiary of the plea agreement, or benefited from the agreement."
 

 Id.
 

 at 101 (citing
 
 Commonwealth v. Giannantonio
 
 ,
 
 114 A.3d 429
 
 , 434-35 (Pa. Super. 2015) (rejecting a nearly identical claim) ). The court thus sustained PSP's contract-related preliminary objections and dismissed the Petition with prejudice.
 
 See
 

 id
 
 .
 

 II. Threshold issues
 

 PSP initially raises threshold issues concerning the appropriateness of Appellant having brought suit in the Commonwealth Court, and of PSP having been named as a defendant in the litigation. PSP suggests we need not reach the merits of Appellant's contract-based claims for relief because he has commenced an action in the "wrong forum" against the "wrong entity." Brief for Appellee at 12, 13. PSP indicates that, because Appellant was sentenced in federal court, he should have brought his contract claim there. The agency adds that, in all events, it only has a ministerial role relative to Megan's Law and, as such, Appellant should have named the Commonwealth, rather than PSP, as respondent.
 

 We disagree on both points. Addressing the agency's jurisdictional argument, we note that Appellant's action (albeit mislabeled) asserts a claim against PSP based on an alleged breach of contract. Whether or not that claim is meritorious, it is a civil action against the Commonwealth government.
 
 See
 
 42 Pa.C.S. § 102 (defining "Commonwealth government" to include "departments, boards, commissions, authorities and officers and agencies of the Commonwealth");
 
 Machipongo Land & Coal Co. v. Dep't of Envtl. Res.
 
 ,
 
 544 Pa. 271
 
 , 274,
 
 676 A.2d 199
 
 , 201 (1996) ;
 
 Barr v. Bureau of Prof'l & Occupational Affairs
 
 ,
 
 803 A.2d 243
 
 , 247-48 (Pa. Cmwlth. 2002). As such, it falls within the scope of the Commonwealth Court's exclusive original jurisdiction.
 
 See
 
 42 Pa.C.S. § 761 (generally giving the Commonwealth Court exclusive original jurisdiction over civil actions against the Commonwealth government, subject to certain exceptions which are not presently relevant). Further, we are unaware of any authority-and PSP has not brought any to our attention-suggesting the jurisdiction conferred by Section 761 is negated where the agreement on which the claim is based was reached in a federal forum.
 

 As for PSP's contention that Appellant should not have named it as respondent, the agency portrays its role as purely ministerial and lacking any discretion or ability to make judgments concerning the length of an individual's Megan's Law registration period. However, that premise is not entirely accurate. PSP must occasionally interpret the governing statutory provisions to determine a particular registrant's obligations, particularly in cases where the statute's requirements are ambiguous in their application. In
 
 A.S. v. PSP
 
 ,
 
 636 Pa. 403
 
 ,
 
 143 A.3d 896
 
 (2016), for example, PSP construed the two-or-more-convictions predicate for lifetime registration to encompass a situation in which a defendant was convicted of multiple offenses based on the same conduct-a construction with which this Court ultimately disagreed.
 
 [4]
 
 In the present dispute, since
 Appellant was not convicted of a Pennsylvania offense, PSP was required, initially under Megan's Law III and then under SORNA, to determine the Pennsylvania crime which is similar to his federal offense.
 
 See
 
 42 Pa.C.S. § 9795.1(a)(3) (superseded) (subjecting individuals convicted of out-of-state, foreign, or federal "offenses similar to" the enumerated Pennsylvania predicate offenses to a ten-year registration requirement);
 

 id.
 

 § 9799.14(b)(21) (same, albeit relative to a different list of predicate offenses).
 

 Just as important, as PSP has enforcement authority with regard to the requirements of SORNA,
 
 see supra
 
 note 3, it is responsible for taking the actions that Appellant claims violate his contractual rights. Hence, if Appellant's claim is meritorious and he is ultimately found to be entitled to a reduction in his registration period, an order directing PSP to provide the requested relief would be effectual given that agency's central role in creating and maintaining the sex-offender registry. Other jurisdictions have recognized that this factor supports the validity of naming the government agency in question as a defendant,
 
 see, e.g.
 
 ,
 
 Schepers v. Comm'r, Ind. Dep't of Corr.
 
 ,
 
 691 F.3d 909
 
 , 913 (7th Cir. 2012) (concluding that the Indiana state corrections department was a proper defendant in a registrant's lawsuit seeking a process to correct Indiana's sex-offender registry errors, where the department was the governmental body responsible for the creation, publication, and maintenance of the registry);
 
 cf.
 

 Ainscough v. Owens
 
 ,
 
 90 P.3d 851
 
 , 858 (Colo. 2004) ("[W]hen a party sues to enjoin or mandate enforcement of a statute, regulation, ordinance, or policy, it is not only customary, but entirely appropriate for the plaintiff to name the body ultimately responsible for enforcing that law."), and we find their reasoning persuasive.
 

 Accordingly, we conclude that where, as here, a defendant's Megan's Law obligations stem from criminal proceedings in a non-Pennsylvania forum, PSP is an appropriate defendant relative to a cause of action which would result in a directive that the individual's registration period be reduced or eliminated.
 
 [5]
 
 Thus, we reject PSP's threshold arguments and turn to whether Appellant has raised a viable contract claim.
 

 III. Breach-of-contract theories
 

 A. The Commonwealth as a third-party beneficiary
 

 Appellant initially maintains that the Commonwealth is a third-party beneficiary of the agreement he reached with the United States, since Pennsylvania enacted Megan's Law and is legally entitled to enforce the Megan's Law obligations triggered by his guilty plea. With regard to the statute, he observes that Section 9795.1(a)(3) of Megan's Law III,
 
 see
 
 42 Pa.C.S. § 9795.1(a)(3) (superseded), was designed to ensure that persons convicted of federal crimes in Pennsylvania would have to register with PSP.
 

 Under Pennsylvania law, with certain exceptions not presently relevant, a
 person assumes third-party beneficiary status-and, as such, has standing to recover under a contract-only where both parties to the contract express an intention to benefit the third party and that intention appears in the contract.
 
 See
 

 Scarpitti v. Weborg
 
 ,
 
 530 Pa. 366
 
 , 370,
 
 609 A.2d 147
 
 , 149 (1992) (citing,
 
 inter alia
 
 , RESTATEMENT (SECOND) OF CONTRACTS § 302 (1979) ). Thus, the concept of a third-party beneficiary exists to give intended beneficiaries, under certain circumstances, standing to bring suit to obtain the benefits in question.
 
 See generally
 

 Estate of Agnew v. Ross
 
 ,
 
 638 Pa. 20
 
 , 42,
 
 152 A.3d 247
 
 , 259-60 (2017). It does not exist to impose judicially-enforceable obligations on a person or entity who was not a party to the contract and may not even have known of its existence. As one federal court has aptly explained:
 

 A third-party beneficiary is one who is given rights under a contract to which that person is not a party. Obligations under such a contract, including any obligations to third parties, are created by agreement between the signatories.... If the signatories so intend, a third party can enforce the contract against the signatory so obligated.
 
 But the third-party beneficiary, who did not sign the contract, is not liable for either signatory's performance and has no contractual obligations to either
 
 .
 

 Motorsport Eng'g, Inc. v. Maserati SPA
 
 ,
 
 316 F.3d 26
 
 , 29 (1st Cir. 2002) (citing,
 
 inter alia
 
 , 13 WILLISTON ON CONTRACTS § 37:1, at 9-10 (4th ed. 2000), RESTATEMENT (SECOND) OF CONTRACTS § 304 (1981), and FARNSWORTH ON CONTRACTS § 10.9, at 773 (1990) ) (emphasis added). Therefore, even if we assume,
 
 arguendo
 
 , that the Commonwealth benefits in some sense from the plea agreement in question, the Petition's factual averments do not support the precept that the Commonwealth, as a purported third-party beneficiary, is subject to
 
 legally-enforceable obligations
 
 in favor of Appellant.
 

 B. Implied contract with the Commonwealth
 

 As a separate theory, Appellant proposes that, at the time of his plea, an implied contract between himself and the Commonwealth was created. He offers that his own actions in pleading guilty and then staying in Pennsylvania after his release from custody reflect his agreement to be bound by the ten-year registration term under Megean's Law III. As for any actions by the Commonwealth, Appellant refers to the fact that the Legislature passed Megan's Law III with the intent that any federal conviction of a similar offense trigger the then-prescribed sex-offender registration obligations on the part of the defendant.
 
 See, e.g.
 
 , Brief for Appellant at 27 (arguing that, in creating Megan's Law legislation, the Commonwealth took into consideration that some offenders convicted in a non-Pennsylvania forum would be required to register in Pennsylvania).
 
 [6]
 

 A contract may be implied in fact when the actions of the parties reflect a "mutual agreement and intent to promise, [and] the agreement and promise have simply not been expressed in words."
 
 Bricklayers of W. Pa. Combined Funds, Inc. v. Scott's Dev. Co.
 
 ,
 
 625 Pa. 26
 
 , 48 n.17,
 
 90 A.3d 682
 
 , 695 n.17 (2014) (quoting 1 WILLISTON ON CONTRACTS § 1:5 (4th ed. 1990) );
 
 see also
 

 Liss & Marion, P.C. v. Recordex Acquisition Corp.
 
 ,
 
 603 Pa. 198
 
 , 210,
 
 983 A.2d 652
 
 , 659 (2009) ("A contract implied in fact is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from [their] acts in the light of the surrounding circumstances." (quoting
 
 Elias v. Elias
 
 ,
 
 428 Pa. 159
 
 , 161,
 
 237 A.2d 215
 
 , 217 (1968) ) ).
 

 While the express plea agreement was made with the United States, Appellant appears to suggest that a separate implied-in-fact contract was formed with the Commonwealth at the same time. The difficulty with this theory is that the Commonwealth did not take any actions in regard to Appellant's guilty plea. To the extent Appellant relies on the General Assembly's prior action in passing the version of Megan's Law which was in effect at the time of his plea, there is no suggestion in the Petition that the legislative body thereby manifested an affirmative promise to federal defendants that their registration periods would remain intact notwithstanding the enactment of amendatory or replacement legislation in the post-plea timeframe.
 

 C.
 
 Commonwealth v. Martinez
 

 In a supplemental brief, Appellant argues he is entitled to relief under
 
 Commonwealth v. Martinez
 
 ,
 
 637 Pa. 208
 
 ,
 
 147 A.3d 517
 
 (2016), a case in which this Court held that defendants who plead guilty pursuant to a plea agreement with the Commonwealth are entitled to the benefit of their bargains insofar as the Megan's Law aspects of their agreements are concerned.
 
 [7]
 
 Appellant indicates that, although
 
 Martinez
 
 involved a defendant's agreement with the Commonwealth, Pennsylvania courts should review and enforce the terms of plea bargains regardless of the identity of the prosecuting entity. In this respect, he suggests that the "intent" of the
 
 Martinez
 
 Court is inconsistent with a circumstance in which only plea agreements consummated in a Pennsylvania court are enforceable. Supplemental Brief for Appellant at 12.
 
 [8]
 

 As we read
 
 Martinez
 
 , it affirms that: (a) plea agreements are essentially in the nature of a contract, and (b) the Commonwealth's obligations-and a defendant's corresponding right to the benefit of his or her bargain-arise when the trial court accepts the plea agreement reached by the parties.
 
 See
 

 Martinez
 
 ,
 
 637 Pa. at 231
 
 ,
 
 147 A.3d at 531
 
 . In terms of the relief available,
 
 Martinez
 
 indicates that a defendant may proceed against the prosecuting entity for specific performance of the contractual terms.
 
 See
 

 id.
 
 at 231-32,
 
 147 A.3d at 532
 
 .
 

 With that said, however, it is relevant that
 
 Martinez
 
 arose in circumstances where the Commonwealth was the prosecuting entity. It did not purport to address whether the Commonwealth could be held liable for specific performance of an agreement forged between a defendant and the government of another jurisdiction. Under
 
 Martinez
 
 and its supporting case law, moreover, it is the prosecutor, not the government of another jurisdiction, who has an affirmative duty to honor promises made in exchange for a defendant's guilty plea.
 
 See
 

 id.
 
 at 232,
 
 147 A.3d at
 
 532 (citing
 
 Commonwealth v. Zuber
 
 ,
 
 466 Pa. 453
 
 , 458,
 
 353 A.2d 441
 
 , 444 (1976) ).
 
 See generally
 

 State v. Barone
 
 ,
 
 147 N.J. 599
 
 ,
 
 689 A.2d 132
 
 , 139 (1997) ("Absent consent or participation by state authorities in [a federal] plea agreement, federal prosecutors cannot bind state prosecutors and vice versa."). Accordingly, we conclude that nothing in
 
 Martinez
 
 provides a basis for a federal defendant, who reaches a plea agreement with the United States, to proceed on a contract-based theory against the Commonwealth.
 

 We realize this puts individuals in Appellant's circumstances in a difficult position, as they have entered into a plea agreement when Megan's Law III's registration periods were in effect, and they cannot secure relief on a contract-based claim from either the federal or state government. Still, such individuals should be aware that the federal government is not responsible for administering Megan's Law in Pennsylvania and, as such, cannot validly agree to be obligated by a specific contractual provision relating to the length of the individual's post-release sex-offender registration.
 
 [9]
 

 IV. Conclusion
 

 The order of the Commonwealth Court is affirmed.
 

 Justices Baer and Mundy join the opinion.
 

 Justice Todd joins Parts I and III of the opinion, as well as the mandate, and files a concurring opinion.
 

 Justice Donohue joins Parts I, II, and III(A) of the opinion, files a concurring and dissenting opinion, and joins the concurring and dissenting opinion authored by Justice Wecht.
 

 Justice Wecht joins Parts I, II, and III(A) of the opinion and files a concurring and dissenting opinion.
 

 Justice Dougherty joins Parts I, II, and III(A) of the opinion and joins the concurring and dissenting opinion authored by Justice Wecht.
 

 JUSTICE TODD, Concurring
 Respectfully, I disagree with the majority's determination that the Pennsylvania State Police ("PSP") is "an appropriate defendant" in this case,
 
 see
 
 Majority Opinion at ----; indeed, for the reasons discussed below, I conclude that, by suing PSP rather than the Commonwealth, Appellant sued the wrong party, and, as a result, the Commonwealth Court, in the first instance, should have adhered to its prior case law and dismissed Appellant's petition without prejudice to raise his claims against the Commonwealth. Thus, I cannot join Part II of the majority's opinion. Nevertheless, because I agree with the majority's ultimate conclusion that Appellant's factual averments (1) failed to support a claim that the Commonwealth is a third-party beneficiary to his federal plea agreement; and (2) failed to support a claim that there exists an implied contract between Appellant and the Commonwealth as a result of his federal plea agreement, I join the remainder of the majority opinion, and its mandate.
 

 As recounted by the majority, on October 14, 2014, Appellant filed in the Commonwealth Court's original jurisdiction a Petition for Review in the Nature of a Writ of Mandamus, naming the "Commissioner of the Pennsylvania State Police" as the respondent, and seeking to compel PSP to change his sexual offender registration status back to a ten-year period. On January 28, 2015, Appellant filed an Amended Petition for Review in the Nature of a Writ of Mandamus, this time naming "The Pennsylvania State Police of the Commonwealth of Pennsylvania" as the respondent.
 
 [1]
 
 Appellant maintained below, and continues to maintain, that he is entitled to enforcement of the terms of his federal plea agreement because:
 
 the Commonwealth
 
 entered into an implied contract with him;
 
 the Commonwealth
 
 was a third-party beneficiary to his federal plea agreement; and
 
 the Commonwealth
 
 , through its adoption of Megan's Law III, "intervened as a party in any federal court prosecution of an equivalent Pennsylvania Megan's Law crime." Appellant's Brief at 24. As the Commonwealth points out, however, although PSP "is an arm of the Commonwealth," the Commonwealth and its agencies "are distinct legal entities." Commonwealth's Brief at 13 (quoting
 
 Tork-Hiis v. Comm. of Pa.
 
 ,
 
 558 Pa. 170
 
 ,
 
 735 A.2d 1256
 
 , 1259 (1999) (observing that the Commonwealth and the Department of Conservation and Natural Resources are distinct legal entities).
 

 The Commonwealth Court addressed a similar argument in
 
 Dougherty v. Pennsylvania State Police of the Commonwealth of Pennsylvania
 
 ,
 
 138 A.3d 152
 
 (Pa. Cmwlth. 2016), wherein the appellant filed a petition for review in the nature of a writ of mandamus, seeking to compel PSP to change his sexual registration status in accordance with the terms of his plea agreement with the Commonwealth. As in
 the instant case, PSP filed preliminary objections, alleging,
 
 inter alia
 
 , that the appellant's contract-based claims failed because PSP was not a party to the plea agreement.
 

 In sustaining PSP's preliminary objections in this regard, the Commonwealth Court in
 
 Dougherty
 
 explained:
 

 Petitioner's allegations focus on the terms of his plea agreement with the Commonwealth. The PSP's role in the SORNA statutory scheme is "more ministerial in nature than adjudicative."
 
 Commonwealth v. Cheeseboro,
 

 91 A.3d 714
 
 , 721 (Pa.Super.2014). Under SORNA, in instances where, as here, the offender was serving a term of probation at the time of SORNA's enactment, the PSP receives registration information from the "appropriate office of probation and parole" and determines the duration of an offender's registration based on the offense of conviction. Section 9799.19(e.1)(1) and 9799.15 of SORNA, 42 Pa.C.S. §§ 9799.19(e.1)(1), 9799.15.
 

 Upon receipt of information concerning an offender convicted of a sexually violent offense prior to the enactment of SORNA, the PSP may take one of three steps. If the sentencing order provided to the appropriate correctional institution, office or board of probation and parole, or PSP by the sentencing court includes a specific term of registration, the PSP is bound to apply the registration term included in the sentence and nothing more.
 
 McCray v. Pennsylvania Department of Corrections
 
 , [
 
 582 Pa. 440
 
 ,
 
 872 A.2d 1127
 
 , 1133 (Pa. 2005) ] (executive branch agencies "lack[ ] the power to adjudicate the legality of a sentence or to add or delete sentencing conditions"). If, however, the sentencing order is unclear or ambiguous, the PSP may seek guidance from the sentencing court and/or other appropriate entities before applying the registration period upon a sexual offender.
 
 See
 
 Section 9799.16(d) of SORNA, 42 Pa.C.S. § 9799.16(d) (stating that "[t]here shall be cooperation between the [PSP], State and county correctional institutions, the Pennsylvania Board of Probation and Parole, the county office of probation and parole, any court with jurisdiction over a sexual offender ... to ensure" that information is collected and placed on the registry.). Finally, if, the sentencing order is silent on the term of registration imposed upon the offender, the PSP must apply the appropriate registration period based on the offense of conviction as required by Section 9799.15 of SORNA, 42 Pa.C.S. § 9799.15.
 

 In all three circumstances, the PSP has
 
 no
 
 duty to inquire into the content or intent of any underlying plea agreement. The PSP is not a party to the plea agreement and disputes over the alleged breach of a plea agreement, and the impact of the plea agreement on a sexually violent offender's duty to register with the PSP, are properly resolved through the criminal justice system in the appropriate sentencing court.
 
 See
 

 Commonwealth v. Bundy
 
 ,
 
 96 A.3d 390
 
 , 394 (Pa.Super. 2014) (discussing the procedure for challenging the retroactive application of SORNA's registration requirement in light of a plea agreement);
 
 see also
 

 Commonwealth v. Partee,
 

 86 A.3d 245
 
 , 247 (Pa. Super.),
 
 appeal denied,
 
 [
 
 626 Pa. 698
 
 ,
 
 97 A.3d 744
 
 (Pa. 2014) ] (concluding that a challenge to the duration of SORNA's registration requirement in light of a plea agreement was "properly reviewed as a petition for
 
 habeas corpus
 
 " (emphasis in original) ). When determining whether a plea agreement has been breached, sentencing courts "look to what the parties to this plea agreement reasonably understood
 to be the terms of the agreement" based on the "totality of the surrounding circumstances."
 
 Commonwealth v. Hainesworth,
 

 82 A.3d 444
 
 , 447 (Pa. Super. 2013) (internal quotations omitted).
 
 See also
 

 Commonwealth v. Nase
 
 ,
 
 104 A.3d 528
 
 , 534 (Pa. Super. 2014) (interpreting a plea agreement through use of contract principles and concluding that the appellant's "registration consequences were unequivocally part of the plea negotiations and arrangement").
 
 Such disputes should name the Commonwealth as the defendant as it is the Commonwealth, acting through the appropriate prosecutor, not the PSP, who is a party to the plea agreement.
 

 Id.
 
 at 159-60 (emphasis added and footnote omitted). The court further noted that the petitioner could "assert his contract-related claims against the Commonwealth in the appropriate court of common pleas,"
 
 id.
 
 at 160, and it dismissed the appellant's claims without prejudice.
 
 Id.
 
 at 161.
 
 [2]
 

 The Commonwealth Court again addressed this issue in
 
 Malone v. Pennsylvania State Police
 
 ,
 
 2017 WL 1533870
 
 (Pa. Cmwlth. filed April 28, 2017). In
 
 Malone
 
 , the petitioner filed a petition for review against PSP seeking a declaratory judgment that he was exempt from SORNA's lifetime registration requirement based on,
 
 inter alia
 
 , the terms of his plea agreement with the Commonwealth. In sustaining PSP's preliminary objections to the petitioner's breach of contract claims, the Commonwealth Court, relying on
 
 Dougherty
 
 , explained that, "because the State Police was not a party to the plea agreement, a breach of contract action against the State Police is inappropriate. We sustain the State Police's preliminary objection to this claim, which belongs in the appropriate court of common pleas."
 
 Malone
 
 , at *7.
 
 [3]
 

 Appellant's claims regarding his federal plea agreement are contract-based claims. As Appellant does not allege that PSP was a party to any plea agreement or contract with Appellant, PSP is not a proper defendant in this case. Thus, in my view, the Commonwealth Court properly sustained PSP's preliminary objections in this regard, but should have dismissed Appellant's petition
 
 without prejudice
 
 to assert his contract-related claims against the Commonwealth in the appropriate court of common pleas, as it did in both
 
 Dougherty
 
 and
 
 Malone
 
 . Nevertheless, because I am aligned with the majority that Appellant's contract-related claims against the Commonwealth ultimately are without merit, I agree with the majority's affirmance of the Commonwealth Court's order.
 

 JUSTICE DONOHUE, Concurring and Dissenting
 

 I join Justice Wecht's well-reasoned Concurring and Dissenting Opinion in full. I write separately to indicate that if the decision of the Commonwealth Court were to be reversed, as Justice Wecht argues persuasively that it should be, upon remand Appellant would be positioned to seek leave to amend his presently pending petition for review in the Commonwealth Court to assert a claim for relief pursuant to this Court's decision in
 
 Commonwealth v. Muniz
 
 , --- Pa. ----,
 
 164 A.3d 1189
 
 (2017). In
 
 Muniz
 
 , this Court held that SORNA's registration provisions constitute punishment and may not be applied retroactively.
 

 Id.
 

 at 1193
 
 (finding that retroactive application of SORNA violates the ex post facto clause of the Pennsylvania Constitution). In light of
 
 Muniz
 
 , a sex offender who negotiated a plea agreement, in federal or state court, or who would otherwise be subject to Megan's Law III, now has a straightforward constitutional claim that he or she may not be subjected to SORNA's more onerous registration requirements.
 
 See
 

 Muniz
 
 ,
 
 164 A.3d at 1193
 
 .
 

 In accordance with Rule 1033 of the Pennsylvania Rules of Civil Procedure, leave to amend should be liberally granted and should not be withheld where there is a reasonable possibility that amendment can be accomplished successfully, absent some prejudice to an adverse party.
 
 Morrison Informatics, Inc. v. Members 1st Fed. Credit Union
 
 ,
 
 635 Pa. 636
 
 ,
 
 139 A.3d 1241
 
 , 1245 (2016) ;
 
 Bata v. Central-Penn Nat. Bank of Phila.
 
 ,
 
 423 Pa. 373
 
 ,
 
 224 A.2d 174
 
 , 182 (1966). In my view, given the clarity of our decision in
 
 Muniz
 
 , amendment could be successfully accomplished and would afford Appellant the relief he now seeks. I note that even the Majority recognizes the possibility for federal plea bargain defendants to seek relief pursuant to
 
 Muniz. See
 
 Majority Op. at 990 n.9. There would also be little or no prejudice to the PSP, as although Appellant has not yet asserted a claim based upon
 
 Muniz
 
 in the present action, the arguments in his original brief filed with this Court make plain that he is seeking the same kind of relief (based on a remarkably similar theory) to which he is now entitled in light of
 
 Muniz
 
 , namely, an order barring the PSP from retroactively applying SORNA.
 
 See
 
 Konyk's Brief at 27 (urging that "application of SORNA to [him] materially undermines his bargain and subjects him to severe conditions that he did not bargain for").
 

 As this is an appeal from the sustaining of preliminary objections in the nature of a demurrer, Appellant's well-pleaded factual averments are accepted as true throughout this opinion.
 
 See
 

 Sernovitz v. Dershaw
 
 ,
 
 633 Pa. 641
 
 , 645 n.2,
 
 127 A.3d 783
 
 , 785 n.2 (2015).
 

 The ten-year registration period arose from the fact that the federal offense in question was "similar to" one of the Pennsylvania ten-year-registration predicate offenses. 42 Pa.C.S. § 9795.1(a)(3) (superseded);
 
 see
 

 id.
 

 § 9795.1(a)(1) (superseded) (enumerating the state-level predicate crimes which trigger a ten-year registration period).
 

 PSP is responsible for maintaining Pennsylvania's Megan's Law registry and enforcing the law's registration mandates.
 
 See, e.g.
 
 , 42 Pa.C.S. §§ 9799.16, 9799.22, 9799.32.
 

 Notably, PSP adopted this reading notwithstanding that "[t]he parties and the trial court believed [the defendant] was subject to a ten-year registration period, not lifetime registration."
 
 Id.
 
 at 409,
 
 143 A.3d at 899
 
 . This Court recognized the statutory text was ambiguous, and it ultimately held that a conviction, followed by a subsequent act, was necessary. Admittedly, the propriety of PSP being a defendant was not at issue in that matter; still, it is relevant that the primary substantive question focused on whether PSP's exercise in statutory construction was correct,
 
 see
 

 id.
 
 at 415,
 
 143 A.3d at 903
 
 ("The issue [in this case] involves statutory interpretation, which is a question of law[.]"), thus reflecting that PSP's actions were more than purely ministerial in character.
 

 To the extent PSP relies on the intermediate court's decision in
 
 Dougherty v. PSP
 
 ,
 
 138 A.3d 152
 
 (Pa. Cmwlth. 2016) (
 
 en banc
 
 ),
 
 see
 
 Brief for Appellee at 14-15, that case is distinguishable in that the defendant was convicted in a Pennsylvania forum and entered into a plea agreement directly with the Commonwealth. We offer no opinion on whether PSP would be a proper defendant in such circumstances.
 

 Appellant briefly advances other arguments which appear designed to support the concept that an implied contract exists between himself and the Commonwealth. These include that, in prosecuting him, the United States acted as an agent of the Commonwealth for Megan's Law purposes, and that the Commonwealth implicitly acted as an intervening party in his federal prosecution.
 
 See
 

 id.
 
 at 25-26. However, there are no allegations in the Petition which would support such determinations.
 

 Relatedly, Petitioner faults the Commonwealth Court for failing to accept as true his "well-pled fact" that an implied contract exists between himself and the Commonwealth. Brief for Appellant at 23. Notably, however, whether an implied contract can be derived from a set of underlying facts represents a question of law.
 
 See
 

 Reitmyer v. Coxe Bros. & Co.
 
 ,
 
 264 Pa. 372
 
 , 376,
 
 107 A. 739
 
 , 741 (1919). Thus, even to the extent Appellant alleged the existence of an implied contract, the Commonwealth Court was not obligated to accept that allegation as true when ruling on PSP's demurrer.
 
 See
 

 Consumers Educ. & Protective Ass'n v. Nolan
 
 ,
 
 470 Pa. 372
 
 , 379,
 
 368 A.2d 675
 
 , 679 (1977).
 

 Martinez
 
 was decided during the pendency of this appeal. This Court directed the parties to file supplemental briefs addressing its potential effect on, and applicability to, the present case.
 

 Appellant also indicates that failure to enforce the ten-year facet of his plea agreement would work a constitutional violation by offending the federal and state Contract Clauses.
 
 See
 
 U.S. Const. art. I, § 10; PA. Const. art. I, § 17. As Appellant did not raise constitutional issues before the Commonwealth Court, any such claim is waived.
 
 See
 
 Pa.R.A.P. 302(a). Appellant seeks to circumvent waiver by reference to a footnote in
 
 Martinez
 
 stating generally that the Contract Clauses "prohibit the Legislature from enacting laws that retroactively impair contract rights."
 
 Martinez
 
 ,
 
 637 Pa. at
 
 220 n.8,
 
 147 A.3d at
 
 525 n.8. Such effort is unavailing, as the
 
 Martinez
 
 Court declined to resolve the appeal on constitutional grounds.
 
 See
 

 id.
 

 at 229 n.16,
 
 147 A.3d at
 
 530 n.16 (opting not to reach any constitutional questions posed because the case was capable of resolution on non-constitutional grounds).
 

 It is also worth noting that, although relief may be unavailable under contract principles, it is not necessarily foreclosed under other theories.
 
 See, e.g.
 
 ,
 
 Commonwealth v. Muniz
 
 , --- Pa. ----,
 
 164 A.3d 1189
 
 (2017) (holding that application of SORNA's longer registration periods relative to convictions which occurred in the pre-SORNA timeframe can give rise to an
 
 ex post facto
 
 violation).
 

 SORNA is the commonly used acronym for the "Sex Offender Registration and Notification Act," 42 Pa.C.S. §§ 9799.10 -9799.41.
 

 See
 
 Maj. Op. at 986-87; 42 Pa.C.S. § 9799.16 ("The Pennsylvania State Police shall create and maintain the registry.").
 

 Accordingly, I join parts I, II, and III(A) of the Majority Opinion. I do not join parts III(B) or III(C).