IN THE COMMONWEALTH COURT OF PENNSYLVANIA

W.W.,                                    :
                                         :
                    Petitioner           :
                                         :
          v.                             :  No. 239 M.D. 2020
                                         :  Argued:  October 15, 2020
Pennsylvania State Police,               :
                                         :
                    Respondent           :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge[1]
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                            FILED:  January 15, 2021


          Before this Court in our original jurisdiction are Respondent
Pennsylvania State Police's (PSP) Preliminary Objections (POs) to Petitioner
W.W.'s Petition for Review (Petition), in which W.W. challenges his sex offender
registration obligations under Subchapter I of the current version of the law requiring
registration of sexual offenders, the Act of June 12, 2018, P.L. 140, No. 29, 42
Pa. C.S. §§9799.10-9799.75 (commonly known as "Act 29").[2]  The PSP objects on

---

[1]This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson
became President Judge.

[2] Act 29 reenacted and amended the Act of February 21, 2018, P.L. 27, 42 Pa. C.S.
§§9799.10 - 9799.75 (commonly known as "Act 10"), which had replaced the Sexual Offender
Registration and Notification Act (SORNA), 42 Pa. C.S. §§9799.10-9799.41.  The evolution of
**(Footnote continued on next page…)**

the grounds that W.W.'s claims cannot stand against the PSP based upon binding precedent. Upon review, we sustain the PSP's POs and dismiss W.W.'s Petition.

## I. Background

On September 7, 2004, W.W. pled guilty to aggravated indecent assault and indecent assault of a person less than 13 years of age. At the time of his plea and sentence, Megan's Law II was in effect. Megan's Law II mandated lifetime registration based on W.W.'s conviction for aggravated indecent assault. *See former*

---

the law preceding SORNA was outlined in *Dougherty v. Pennsylvania State Police*, 138 A.3d 152, 155 n.8 (Pa. Cmwlth. 2016):

> Courts have also referred to SORNA as the Adam Walsh Act. SORNA is the General Assembly's fourth enactment of the law commonly referred to as Megan's Law. Megan's Law I, the Act of October 24, 1995, P.L. 1079 (Spec. Sess. No. 1), was enacted on October 24, 1995, and became effective 180 days thereafter. Megan's Law II[, the Act of May 10, 2000, P.L. 74,] was enacted on May 10, 2000[,] in response to Megan's Law I being ruled unconstitutional by our Supreme Court in *Commonwealth v. Williams*, [733 A.2d 593 (Pa. 1999)]. Our Supreme Court held that some portions of Megan's Law II were unconstitutional in *Commonwealth v. Gomer Williams*, [832 A.2d 962 (Pa. 2003)], and the General Assembly responded by enacting Megan's Law III[, the Act of November 24, 2004, P.L. 1243,] on November 24, 2004. The United States Congress expanded the public notification requirements of state sexual offender registries in the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§16901-16945, and the Pennsylvania General Assembly responded by passing SORNA on December 20, 2011[,] with the stated purpose of "bring[ing] the Commonwealth into substantial compliance with the Adam Walsh Child Protection and Safety Act of 2006." 42 Pa. C.S. §9799.10(1). SORNA went into effect a year later on December 20, 2012. Megan's Law III was also struck down by our Supreme Court for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution [(Pa Const. art. III, §3)]. *Commonwealth v. Neiman*, [84 A.3d 603, 616 (Pa. 2013)]. However, by the time it was struck down, Megan's Law III had been replaced by SORNA.

2

42 Pa. C.S. §9795.1(b)(2)(i). W.W. has been registering as a sex offender since 2008 when he was released from incarceration.

On April 10, 2020, W.W. filed a two-count Petition seeking: (1) a declaration under the Declaratory Judgments Act (DJA)[3] that Subchapter I of Act 29 does not apply to him because it is an unconstitutional *ex post facto* law as applied to him and deprives him of his procedural due process, substantive due process, and contractual rights; and (2) a writ of mandamus to compel the PSP to permanently remove his name from the sexual offender registry. More particularly, W.W. claims that Subchapter I and any future iteration of Pennsylvania's sex offender registration scheme is an unconstitutional *ex post facto* law as applied to him under the Pennsylvania Supreme Court's decision in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2016), *cert. denied*, 138 S. Ct. 925 (2018). He asserts that Act 29 deprives him of substantive due process because it does not narrowly tailor its punishment by the least restrictive means available. He maintains that Act 29 deprives him of procedural due process by creating an irrebuttable presumption that he is incapable of rehabilitation, which encroaches upon his fundamental right to reputation, without any mechanism for proving otherwise. He claims that the PSP has violated his contractual rights by applying Act 29 to him when this law was enacted long after he entered his guilty plea.

In response, the PSP filed POs. The PSP objects to W.W.'s *ex post facto*, substantive due process, procedural due process, and contractual claims on the ground that he has failed to state a claim upon which relief may be granted based on binding precedent. The PSP also demurs on the ground that the existence of an

---

[3] 42 Pa. C.S. §§7531-7541.

3

independent federal obligation to register precludes the mandamus relief requested in this matter.[4]  Both parties filed briefs in support of their respective positions.[5]

## II. Issues

First, the PSP argues that W.W.'s *ex post facto* claim fails as a result of the Pennsylvania Supreme Court's recent decision in *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020).  Second, the PSP argues that W.W.'s substantive due process claim similarly fails under *Lacombe*.  Third, the PSP contends that W.W.'s procedural due process claim fails because Acts 10 and 29 do not implicate the irrebuttable presumption doctrine.  Fourth, the PSP maintains that W.W.'s Petition should be dismissed because W.W.'s contract claim cannot lie against the PSP based on *Dougherty v. Pennsylvania State Police*, 138 A.3d 152 (Pa. Cmwlth. 2016), because the PSP was not a party to W.W.'s plea agreement.  Finally, the PSP argues that W.W.'s mandamus count fails because, even if the Court was to grant relief under state law, W.W. still has an independent obligation under federal law to register as a sexual offender.  Consequently, he is not entitled to have his name permanently removed from the registry.

---

[4] The PSP also objected on the grounds of mootness and improper service, which it has since withdrawn.  PSP's Brief at 1 n.1.

[5] On July 21, 2020, shortly after the PSP filed its POs, the Supreme Court filed its decision in *Lacombe*, which the PSP argues is controlling in its brief.  We note that W.W. filed his brief on July 16, 2020, just days before the Supreme Court decided *Lacombe* (July 21, 2020), and in direct response to the PSP's POs as opposed to the PSP's brief in support.  While the PSP's brief addresses *Lacombe*, W.W.'s brief does not.  However, at oral argument, W.W.'s counsel had the opportunity to address *Lacombe* before the panel.

### III. Discussion
#### A. *Ex post facto*

First, the PSP argues that the Supreme Court's decision in *Lacombe* is binding precedent that fatally undercuts many of W.W.'s arguments, particularly his *ex post facto* claim. We agree.

In *Lacombe*, the Supreme Court determined that Subchapter I of Act 29 is nonpunitive and its retroactive application does not violate the constitutional prohibition against *ex post facto* laws. *Lacombe*; *see T.S. v. Pennsylvania State Police* (Pa., No. 34 MAP 2020, filed December 22, 2020) (per curiam order). In *Lacombe*, the petitioners argued that, because their offenses were completed before Act 29 took effect, retroactive application of Act 29 constituted an *ex post facto* violation under *Muniz*. However, Act 29 was enacted after *Muniz* to address the constitutional infirmities identified therein. The General Assembly declared its intent that Act 29 is nonpunitive. 42 Pa. C.S. §9799.51(b)(2). To achieve its dual goals of ensuring public safety without creating another unconstitutionally punitive scheme, the General Assembly made a number of material changes. In this new statutory scheme, the General Assembly eliminated a number of crimes that previously triggered registration requirements and reduced the frequency with which an offender must report in person to the PSP. *Lacombe*, 234 A.3d at 615.

In determining whether Subchapter I of Act 29 constitutes criminal punishment, the *Lacombe* Court applied the two-part test espoused in *Muniz*. That test considers whether the General Assembly's intent was to impose punishment and, if not, whether the statutory scheme is nonetheless so punitive either in purpose or effect as to negate the legislature's nonpunitive intent. *Lacombe*, 234 A.3d at 614. The parties conceded that the legislative intent was nonpunitive. *Id.* The issue then turned on its effect.

5

For this, the Supreme Court relied on the following *Mendoza-Martinez*[6] factors: (1) whether the law involves an affirmative disability or restraint; (2) whether the legislative requirements have been historically regarded as punishment; (3) whether the law comes into play only on a finding of scienter; (4) whether operation of the law promotes traditional aims of punishment; (5) whether the behavior to which the law applies is already a crime; (6) whether there is an alternative purpose to which the law may be rationally connected; and (7) whether the law is excessive in relation to the alternative purpose assigned. *Lacombe*, 234 A.3d at 606 n.3. The Court found that three of the five factors (nos. 1, 6 and 7) weighed in favor of finding Subchapter I nonpunitive. *Id.* at 626. The Court gave little weight to the fact that Subchapter I promotes traditional aims of punishment, scienter and whether the behavior is already a crime (nos. 3, 4, 5). *Id.* The Supreme Court gave significant weight to the fact that Subchapter I is narrowly tailored to its nonpunitive purpose of protecting the public and legislative intent. *Id.* Balancing these factors, the Court held that "Subchapter I is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws." *Lacombe*, 234 A.3d at 605-06.

Insofar as W.W.'s claims are predicated on the argument that Subchapter I is punitive in nature, such claims are no longer viable based on *Lacombe*. This clearly includes W.W.'s *ex post facto* claim. Thus, we sustain the PSP's PO to W.W.'s *ex post facto* claim.

### B. Substantive Due Process Claim

Next, the PSP argues that *Lacombe* also renders meritless W.W.'s substantive due process claim because Subchapter I is nonpunitive.

---

[6] *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963).

Notwithstanding, the PSP alternatively argues that substantive due process is not the proper analysis. Although the right to reputation is a fundamental right, Act 29 is not making a determination as to W.W.'s likelihood to reoffend but to sex offenders as a cohort. Even if this Court was to address the merits of W.W.'s substantive due process claim, Act 29 satisfies constitutional muster under both intermediate and strict scrutiny. Unlike its predecessors, Act 29 allows offenders an opportunity to be removed from the registry after 25 years.

The *Lacombe* Court noted that, while a substantive due process challenge to Subchapter I was not squarely before it, this claim would be dependent upon a finding that Subchapter I is punitive. The Court opined, "given our ultimate holding that Subchapter I is nonpunitive, the claim[] would fail in any event." *Lacombe*, 234 A.3d at 608 n.5. Because Subchapter I is nonpunitive, W.W.'s substantive due process claim likewise fails. *See id.* Therefore, we sustain the PSP's PO in this regard.

### C. Procedural Due Process Claim

Next, the PSP argues that, to the extent that *Lacombe* does not cast aside W.W.'s procedural due process claim, this claim fails for other reasons. Contrary to W.W.'s assertions, Act 29 does not implicate the irrebuttable presumption doctrine. Therefore, no due process is required at all. Even if the doctrine applies, the presumption that adult sex offenders as a cohort have a high likelihood of reoffending is still accepted as universally true and any policy-related arguments to the contrary should be rejected by the Court. There is no reasonable alternative for assessing the dangerousness of sexual offenders as a cohort.

The *Lacombe* Court did not comment upon the merits of a procedural due process claim. Since W.W.'s procedural due process claim is not predicated

7

upon his argument that Subchapter I is punitive, we examine his claim under the irrebuttable presumption doctrine.

Under the irrebuttable presumption doctrine, the presumption violates due process if "the presumption is deemed not universally true and a reasonable alternative means of ascertaining that presumed facts are available." *In re J.B.*, 107 A.3d 1, 14 (Pa. 2014). In *J.B.*, the Supreme Court determined that SORNA as applied to *juvenile* sex offenders violated due process rights through the use of an irrebuttable presumption. The law imposed lifetime registration on juvenile offenders without considering the differences between juveniles and adults or the individual characteristics of each juvenile offender. The presumption relied upon was not universally true. Unlike adult sex offenders, juvenile sex offenders have a much lower rate of re-offense than their adult counterparts. Given that few juvenile sexual offenders recidivate, registration of juvenile sexual offenders did not improve public safety. Juveniles subject to registration suffered irreparable harms, including difficulty obtaining housing, employment, schooling, etc. SORNA did not provide juvenile offenders a meaningful opportunity to challenge the presumption. A reasonable alternative means of ascertaining the presumed fact was already in use in Pennsylvania for assessing which juvenile offenders pose a high risk of recidivism. The Court concluded:

> Given that juvenile offenders have a protected right to reputation encroached by SORNA's presumption of recidivism, where the presumption is not universally true, and where there is a reasonable alternative means for ascertaining the likelihood of recidivating, we hold that the application of SORNA's current lifetime registration requirements upon adjudication of specified offenses violates juvenile offenders' due process rights by utilizing an irrebuttable presumption.

8

*J.B.*, 107 A.3d at 19-20.

The difference here is that we are not dealing with juvenile sex offenders, but adult sex offenders. Although there are some studies to the contrary, the presumption that adult sex offenders as a cohort pose a higher risk of recidivism is still accepted as universally true. *See Lacombe*; *Muniz.*

In *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), the United States Supreme Court considered a similar challenge to the presumption regarding adult sex offenders under Connecticut's version of Megan's Law. Therein, the United States Supreme Court held that individuals "who assert a right to a hearing under the Due Process Clause [(U.S. Const. amend. XIV, §1)] must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." *Id.* at 8. "[T]he fact that respondent seeks to prove that he is not currently dangerous is of no consequence under Connecticut's Megan's Law." *Id.* at 7.

Similarly, Subchapter I does not signal the dangerousness of any particular offender. It merely provides that adult sex offenders, as a group, have a high risk of recidivism. A hearing on his individual dangerousness or likelihood to reoffend is irrelevant to the universal truth of the group as a whole. Therefore, the irrebuttable presumption doctrine does not apply.

Even if it did, this Court is not the proper forum to challenge the presumption. In *Lacombe*, our Supreme Court reaffirmed the finding in *Muniz* that "[a]lthough there are contrary scientific studies, we note there is by no means a

consensus, and as such, *we defer to the General Assembly's findings on this issue*." *Lacombe*, 234 A.3d at 625 (citing *Muniz*) (emphasis added).[7]

Finally, unlike in *J.B.*, there is no reasonable alternative for assessing the dangerousness of sexual offenders as a cohort. The question before the Court is not whether there is an alternative means for assessing the risk of an individual offender's recidivism; the question is whether there is an alternative means for assessing the risk of recidivism of sexual offenders as a cohort. At this juncture, there is no reasonable method of doing so. We, therefore, sustain the PSP's PO to W.W.'s procedural due process claim.

### D. Contract Claim

Next, the PSP argues that W.W.'s contract claim cannot lie against the PSP because it was not a party to the plea agreement. Even assuming there was a term in W.W.'s plea agreement mandating a certain period of registration, an

---

[7] Our Supreme Court recently examined the irrebuttable presumption doctrine in the context of a post-sentence motion challenging the constitutionality of the revised Subchapter H of Act 29, 42 Pa. C.S. §§9799.10-9799.42. *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020). While reaffirming its position of judicial deference to the General Assembly's findings on matters of public policy as stated in *Muniz*, the Court opined that such deference "is not boundless." *Torsilieri*, 232 A.3d at 583. The Supreme Court determined that the trial court had authority to consider the sex offender's scientific evidence to address whether a scientific consensus has developed to overturn the legislative determinations in regard to sexual offenders' recidivism rates. *Id.* Thus, the Supreme Court vacated the trial court's order declaring Subchapter H unconstitutional and remanded the matter for further development of the record. *Id.*

However, *Torsilieri* does not alter our analysis here. While we recognize that the presumption may change based on new scientific evidence, at the present time, the presumption that adult sex offenders as a cohort pose a higher risk of recidivism is still accepted as universally true. *See Lacombe*; *Muniz*. In the context of a petition seeking declaratory and mandamus relief, W.W. cannot establish a clear legal right in this regard. *See Allen v. Department of Corrections*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014) (the purpose of mandamus is to enforce legal rights already established, not to establish them).

10

offender does not have a remedy against the PSP. *Dougherty.* Any remedy would be against the Commonwealth in a court of common pleas. *Id.* W.W. does not argue that he agreed to a different period of registration than actually imposed. Rather, W.W. argues that he impliedly agreed to register under the laws that existed at the time he entered his guilty plea, which was Megan's Law II, which has since been repealed.

In *Dougherty*, this Court entertained a similar contract claim against the PSP. Therein, the petitioner filed a petition for review in the nature of a writ of mandamus seeking to compel the PSP to change his sexual registration status in accordance with the terms of his plea agreement with the Commonwealth. The PSP objected alleging that the petitioner's contract-based claims failed because the PSP was not a party to the plea agreement. In sustaining the PSP's PO, this Court explained that "it is the Commonwealth, acting through the appropriate prosecutor, not the PSP, [that] is a party to the plea agreement." *Dougherty*, 138 A.3d at 160. We determined:

> [T]he PSP has *no* duty to inquire into the content or intent of any underlying plea agreement. The PSP is not a party to the plea agreement and disputes over the alleged breach of a plea agreement, and the impact of the plea agreement on a [sex offender's] duty to register with the PSP, are properly resolved through the criminal justice system in the appropriate sentencing court.

*Id.* (emphasis in original). We further explained that, in determining the appropriate period of registration, the PSP must comply with the registration terms outlined in the sentencing order. *Id.* at 159-60. Consequently, "if[ ] the sentencing order is silent on the term of registration imposed upon the offender, the PSP must apply the appropriate registration period based on the offense of conviction" under the applicable sex offender statute. *Id.* at 160 (emphasis added).

11

Although *Dougherty* was decided shortly before *Muniz*, *Dougherty* continues to remain valid precedent despite recent changes in the landscape of sex offender registration. *See Huu Cao v. Pennsylvania State Police* (Pa. Cmwlth., No. 512 M.D. 2015, filed October 16, 2019); *Huyett v. Pennsylvania State Police* (Pa. Cmwlth., No. 516 M.D. 2015, filed August 17, 2017);[8] *see also Konyk v. Pennsylvania State Police of Commonwealth of Pennsylvania*, 183 A.3d 981, 986 (Pa. 2018) (rejecting a petitioner's contract claim against Commonwealth and the PSP based on federal plea bargain agreement to which respondents were not parties or third-party beneficiaries and rejecting theory of an implied contract); *see also Konyk*, 183 A.3d at 991-92 (Todd, J., concurring) (citing *Dougherty* favorably for the precept that the PSP was not a party to the federal plea agreement and consequently not a proper defendant in the petitioner's contract-based case). Thus, we decline W.W.'s invitation to overrule *Dougherty*.

Because the PSP was not a party to W.W.'s plea agreement, the PSP is not liable for breach of such agreement. Furthermore, there is no evidence that the sentencing court imposed a shorter period of registration than that mandated by statute. The PSP must apply the appropriate registration period based on the offense of conviction under the applicable sex offender statute, which is Subchapter I. *See Dougherty*. There is no basis upon which to conclude that the registration period in effect at the time of sentencing would remain intact notwithstanding the enactment of amendatory or replacement legislation. *See Konyk*, 183 A.3d at 989. Therefore, we sustain the PSP's PO to W.W.'s contractual claim.

---

[8] Section 414(a) of this Court's Internal Operating Procedures authorizes the citation of unreported panel decisions issued after January 15, 2008, for their persuasive value, but not as binding precedent. 210 Pa. Code §69.414(a).

## E. Federal Registration Obligation

Finally, the PSP argues that W.W. has an independent federal obligation to register, which precludes his ability to obtain mandamus relief in this Court. The PSP maintains that the federal registration requirement applies irrespective of state law. Mandamus is appropriate only when an individual has a clear right to relief. Even if this Court was to grant W.W. relief from registering under state law, W.W. is compelled to register under federal law. In essence, W.W. is seeking an advisory opinion, which this Court should not entertain.

A proceeding in mandamus is an extraordinary remedy at common law, designed to compel the performance of a ministerial act or mandatory duty. *Duncan v. Pennsylvania Department of Corrections*, 137 A.3d 575, 576 (Pa. 2016); *Allen v. Department of Corrections*, 103 A.3d 365, 370 (Pa. Cmwlth. 2014). "The purpose of mandamus is not to establish legal rights, but to enforce those rights already established beyond peradventure." *Allen*, 103 A.3d at 369 (quoting *Detar v. Beard*, 898 A.2d 26, 29 (Pa. Cmwlth. 2006)). "This Court may only issue a writ of mandamus where: (1) the petitioner possesses a clear legal right to enforce the performance of a ministerial act or mandatory duty; (2) the [respondent] possesses a corresponding duty to perform the act; and (3) the petitioner possesses no other adequate or appropriate remedy." *Id.* at 370; *accord Duncan*, 137 A.3d at 576. "Mandamus can only be used to compel performance of a ministerial duty and will not be granted in doubtful cases." *Allen*, 103 A.3d at 370.

W.W. asks this Court to compel the PSP to remove his name from the sex offender registry. However, W.W.'s substantive obligation to register as a sex offender arises under both state and federal law. Under federal law, "[a] sex offender shall register . . . in each jurisdiction where the offender resides . . . ." 42 U.S.C. §20913. A "sex offender" is "an individual who was convicted of a sex offense,"

13

and the definition of "sex offense" includes "a criminal offense that is a specified offense against a minor." 42 U.S.C. §20911(1) and (5)(A)(ii).

In *Thomas v. Blocker*, 799 F. App'x 131 (3d Cir. 2020), *cert. denied*, __ U.S. __ (U.S., No. 19-1275, filed June 29, 2020),[9] the United States Court of Appeals for the Third Circuit considered whether a sex offender had a duty to register as a sex offender under the federal law, even though he claimed to be exempt under Pennsylvania's scheme. The appellant argued that state officials could not compel him to register. The Third Circuit Court rejected this argument and ruled that the sex offender's federal duty to register under federal law was independent of Pennsylvania law. *Thomas*, 799 F. App'x at 135.

We similarly conclude that, even if W.W. prevailed with his state claims, his independent federal obligation to register remains. Within the context of mandamus, W.W. does not have a clear right to relief to have his name removed from the registry and the PSP is under no duty to do so. Thus, we sustain the PSP's demurrer in this regard.

## IV. Conclusion

Upon review, we sustain the PSP's POs to W.W.'s Petition seeking declaratory and mandamus relief, and we dismiss his Petition.

_____
MICHAEL H. WOJCIK, Judge

---

[9] This opinion may be cited for its persuasive value, but not as binding precedent, consistent with Rule 32.1 of the Federal Rules of Appellate Procedure, Fed.R.App.P. 32.1.

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

W.W.,                                    :
                                         :
                    Petitioner           :
                                         :
          v.                             : No. 239 M.D. 2020
                                         :
Pennsylvania State Police,               :
                                         :
                    Respondent :

# **O R D E R**

AND NOW, this 15<u>th</u> day of <u>January</u>, 2021, we SUSTAIN Respondent's Preliminary Objections to Petitioner's Petition for Review (Petition) in accordance with the foregoing opinion and we dismiss Petitioner's Petition.


_____
MICHAEL H. WOJCIK, Judge